2008 ME 176

**ESTATE OF Thelma M. MILLER.**

Supreme Judicial Court of Maine.

Argued: Oct. 29, 2008.
Decided: Dec. 4, 2008.

Robert E. Sandy, Jr., Esq. (orally), Sherman & Sandy, Waterville, ME, for Robert L. Gray.

David E. Bernier, Esq. (orally), Marden Dubord Bernier & Stevens, Waterville, ME, for Roselyn Bean, personal representative of the Estate of Thelma Miller.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1]   Robert Gray appeals from a judgment entered by the Waldo County Probate Court (*Longley, J.*) finding that a checking account and a savings account were assets of his late mother's estate, and ordering him to turn over the proceeds of the accounts with interest to the estate's personal representative.   He also appeals the court's denial of his request for attorney fees.   Gray contends that the accounts were not estate assets because they were joint accounts to which he held a right of survivorship.   The personal representative, who sued Gray to recover the accounts, argues that the Probate Court correctly found that Thelma Miller's uncontested will controls their distribution. We vacate the judgment with respect to the savings account, and otherwise affirm.

## I.   FACTS AND PROCEDURE

[¶ 2]   Thelma Miller died testate on March 28, 2004, at the age of ninety.   Her will, signed on December 21, 1994, and naming her daughter Roselyn Bean as personal representative of her estate, was filed in the Waldo County Probate Court.

[¶ 3]   Neither party contests the validity of the will.   There is one provision at issue, which states:

I.   I direct that my bills, debts, funeral expenses, and expenses of administration be paid, to the extent possible, from the cash, bank accounts, and certificates of deposit which stand in my name as of the date of my death.   After all such payments have been satisfied, I give, devise, and bequeath all of the rest, residue and remainder of my cash, bank accounts, and of my Certificates of Deposit to my three children, PAULINE FERNALD of Waterville, Maine, ROSELYN BEAN of Belfast, Maine, and ROBERT GRAY who lives part of the time in Bath, Maine and part of the time with me in Searsport, Maine, provided they survive me.

[¶ 4]   Thelma Miller left two accounts at People's Heritage Bank (now TD Banknorth) that are in dispute: a checking account containing $110,665.36, and a savings account containing $24,095.54.   The parties agreed that a third account, a certificate of

deposit worth $22,463.02, was an estate asset. At the time of Miller's death, the bank statement for these accounts was being mailed to "Thelma M. Miller or Robert L. Gray" at her home address.

[¶ 5] In April 2004, Bean, Gray, and their sister met with the attorney who was then legal counsel for the estate. At the meeting Gray acknowledged that the checking and savings accounts contained his mother's money; he said that he had access to the accounts to help her pay the bills. At trial, Gray testified that he did not make any transactions in the accounts while Miller was alive. He did help her keep her check register, and in her later years he wrote out checks for her that she would then sign.

[¶ 6] Following the meeting with the estate's attorney, there was conflict between the siblings in having Miller's property inventoried, and over her funeral arrangements. In June 2004 the estate's attorney wrote to Gray, advising him that an inventory was necessary, and asking him to sign a form so the bank would give Bean, as personal representative, access to the checking and savings accounts. Soon after, Gray went to the bank and signed a "personal account maintenance form" removing Miller's name from the accounts. In October 2004, Gray moved the money in the two accounts to another bank, seeking "a better interest rate."

[¶ 7] In May 2005, Bean, in her capacity as personal representative of the estate, filed a three-count complaint against Gray in the Waldo County Probate Court. The complaint asked the court to declare that the checking and savings accounts were assets of the estate on one of three grounds: (1) they were not joint accounts; (2) if they were, Gray became a joint owner through an improvident transfer; or (3) Gray's retention of the accounts constituted an unjust enrichment.

[¶ 8] Nearly two years of discovery and pretrial proceedings followed, culminating in a trial held over four days in the spring and summer of 2007. In its written judgment, the court implicitly found that the checking account was not a joint account, and found that the savings account, although jointly owned by Robert Gray, was nevertheless an estate asset by virtue of the intention declared in Thelma Miller's will. The court ordered Gray to turn over the proceeds of the accounts to Bean with accrued interest. Because of its ruling that both accounts were estate assets, the court briefly discussed but did not decide Bean's claims of an improvident transfer or an unjust enrichment. Finally, the court declined to award Gray attorney fees due to what it found to be his "dilatory behaviors" during the litigation. This appeal followed.

## II. DISCUSSION

■ [¶ 9] We review the trial court's factual findings for clear error, and its application of the applicable law to those facts de novo. *Estate of Fournier,* 2006 ME 89, ¶ 5, 902 A.2d 852, 853. In general, a court probating an estate should "discover and make effective the intent of a decedent in the distribution of his property." 18–A M.R.S. 1–102(b)(2) (2007). When a joint account with a right of survivorship is left by a decedent, however, the probate code is more specific:

Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.

18–A M.R.S. 6–104(a) (2007).

[¶ 10] The required "clear and convincing evidence" of an intention to override

the right of survivorship cannot be supplied by a subsequent will. 18–A M.R.S. 6–104(e) (2007);[1] *see Estate of Cormier,* 580 A.2d 157, 158 (Me.1990) (citing section 6–104(e) in holding that the Probate Court "gerred in relying on the will as clear and convincing evidence of a contrary intention" when determining ownership of a joint savings account).

[¶ 11] Given these statutory provisions, there were two issues for the Probate Court to resolve: (1) whether Robert Gray was a joint owner of Thelma Miller's checking and savings accounts; and (2) if so, whether there is clear and convincing evidence, apart from Miller's will, that when Miller created the accounts she intended to pass them following her death other than to Gray as the surviving owner.

A. Checking Account

[¶ 12] At trial, a copy of the front side of a signature card opening the checking account was admitted in evidence; the sole account holder listed was Thelma Miller and the card bore only her signature. The card was undated, however a bank statement showed that the account was opened sometime before September 1994.

[¶ 13] A representative of the bank testified that prior to the system now in use, new accounts were opened with a signature card, which was "a record of ownership of the account," and "the controlling document." She said that the signature card for Thelma Miller's checking account showed her to be the sole owner, and that it did not indicate any right of survivorship. The representative also said that to change an account's ownership, positive action on the part of the account owner was required that would result in a document kept with the original signature card; she

saw no such document in the bank's records.

[¶ 14] To counter this evidence suggesting that Miller was the checking account's sole owner, Gray established that the bank statement for the account issued in October 1994 was addressed only to Thelma Miller, but for the following month, November 1994, the addressee changed to "Thelma M. Miller or Robert L. Gray." The bank representative testified it was reasonable to infer that appearance of the words "or Robert L. Gray" on the statement meant that the account owner had initiated a change making the account jointly owned. The representative said that if the statement's mailing address was simply being changed, the bank would use the phrase "care of," not the word "or," which was used to designate joint ownership with a right of survivorship.

[¶ 15] The representative said that the bank would not put someone's name on the account without written documentation, however the "account maintenance form" now used to make such changes is only kept for twenty-four months, after which only the electronic record remains. In this case she saw no evidence of a bank error, and inferred that Thelma Miller went to the bank and asked to have Robert Gray added to the account as a joint owner. Notwithstanding the representative's inference, however, she was clear that the signature card rather than the bank statement is the controlling document for determining account ownership.

[¶ 16] Robert Gray testified that he had never seen a document making him a joint owner of the checking account, and he considered the money in the account to

1. The statute provides that: "A right of survivorship arising from the express terms of the account or under this section ... cannot be changed by will." 18–A M.R.S. § 6–104(e) (2007).

belong to his mother. He said that he had never spoken to her about the addition of his name to the statement, about the account's ownership, or about its disposition after her death. Gray said that he had never made any transactions in the account while Miller was alive.

[¶ 17] The Probate Court determined that the checking account was an estate asset based on the signature card, which it found "contains the key information regarding the type of account created and serves as a bank's record of ownership." Although the bank representative's testimony was somewhat contradictory regarding the evidence of sole ownership established by the signature card versus the inference of joint ownership suggested by the bank statement, her testimony nonetheless provided evidentiary support for the court's factual finding that the signature card proved Thelma Miller's sole ownership of the checking account. Accordingly, that finding was not clearly erroneous. *See In re Beauchene*, 2008 ME 110, ¶ 7, 951 A.2d 81, 84 (stating that factual findings are reviewed for clear error and will be affirmed "if there is competent evidence in the record to support them, even if the evidence might support alternative findings of fact" (quotations marks omitted)).

[¶ 18] Once the court found that Robert Gray was not the joint owner of the checking account, 18–A M.R.S. 6–104(a) did not apply and the court was required to "discover and make effective the intent of [Miller] in the distribution of [her] property" as directed in her will.[2] 18–A M.R.S. 1–102(b)(2).

### B. Savings Account

■ [¶ 19] The facts found by the Probate Court regarding the savings account are materially different from those concerning the checking account. Significantly, unlike the checking account, no signature card or any other document showing the origin of the savings account was produced at trial. As with the checking account, the bank statements showed a change in addressee from "Thelma M. Miller" to "Thelma M. Miller or Robert L. Gray" in November 1994. Additionally, two passbooks for the savings account were admitted in evidence showing transactions from July 1996, some eight years before Miller's death, through October 2004, approximately six months after her death; the passbooks had the names of both Thelma Miller and Robert Gray on their covers. Gray testified that he did not know the passbooks existed until he discovered them while collecting documents for the trial.

[¶ 20] Noting this evidence, the Probate Court implicitly found that the savings account was jointly owned by Gray.[3]

---

**2.** In finding that the signature card controlled its determination of the checking account's ownership, the trial court used the language of section 6–104(a) in saying that "[o]bviously, there is clear and convincing evidence of the required 'different intention.'" Recognizing that section 6–104(a) is inapplicable unless a joint account exists in the first instance, Gray argues that the mention of a "different intention" means the court must have concluded that the checking account was a joint account. The court may have been referring generally to Thelma Miller's desire that the money pass in accordance with her will, but

in any event, in finding that the account was an estate asset based on the signature card, the court did not discuss the change to the bank statement. For it to have found that the checking account was jointly owned, the bank statement would have been the key piece of supporting evidence. We are satisfied that the court found the checking account was solely owned by Thelma Miller.

**3.** The court's explicit finding that "the statements and passbooks evidence that a joint savings account may have been created" was equivocal. However, the court began its

That finding is supported by competent evidence in the record and is not clearly erroneous. *See In re Beauchene,* 2008 ME 110, ¶ 7, 951 A.2d at 84. Notwithstanding its finding of a joint account, the court ultimately concluded that "the Last Will and Testament of Thelma M. Miller (dated Dec. 21, 1994) clearly and convincingly evidences [an] intention different from the creation of a joint account," and on that ground held that the savings account was an estate asset.

[¶ 21] We must vacate this part of the judgment because, for two reasons, the will could not constitute the "clear and convincing evidence of a different intention" required by section 6-104(a) before preventing a joint account from passing to a surviving owner. First, the probate code states that a will cannot perform that function. 18-A M.R.S. 6-104(e); *see Estate of Cormier,* 580 A.2d at 158. Second, the bank statement shows that the will was signed after the joint account was created, and section 6-104(a) requires that the evidence of a different intention exist "at the time the account is created." 18-A M.R.S. 6-104(a).

[¶ 22] Apart from the will, the trial court cited no evidence to support a conclusion that Thelma Miller did not intend to have the savings account pass to Gray as the surviving owner.[4] Absent clear and convincing evidence of a contrary intention at the time the joint account was created, Gray assumed sole ownership of the account upon Miller's death by operation of section 6-104(a).

C.   Improvident Transfer

■ [¶ 23] Because we conclude that Robert Gray is the owner of the savings account, we reach the personal representative's claim that he acquired ownership of that account through an improvident transfer pursuant to the Improvident Transfer Act (the Act), 33 M.R.S. 1021–1025 (2007). Gray argues that Thelma Miller's action making him a joint owner was not an improvident transfer, and that in any event the cause of action is time-barred by the statute of limitations. The Probate Court determined that it did not need to decide this question after finding that both the checking and savings accounts were assets of the estate. We first consider Gray's statute of limitations argument.

[¶ 24] The bank statements cited by the trial court show that Miller added Gray to the savings account as a joint owner by November 1994. The determinative question here is when the alleged improvident transfer cause of action accrued—in November 1994, as Gray contends, or in 2004 when Gray took control

---

analysis of the savings account by "focus[ing][on] the requirement in 18-A M.R.S.A. 6-104 of 'clear and convincing evidence of a contrary intention at the time of creation,'" ultimately finding that such evidence existed. The court would not have undertaken that full analysis unless it first found that a joint account existed, and we are satisfied it made that finding.

4.   The probate code allows an account owner to change a joint ownership designation by complying with specific requirements:

The provisions of section 6-104 as to rights of survivorship are determined by the form

of the account at the death of a party. This form may be altered by written order given by a party to the financial institution to change the form of the account.... The order ... must be signed by a party, received by the financial institution during the party's lifetime, and not countermanded by other written order of the same party during his lifetime.

18-A M.R.S. § 6-105 (2007). There is no evidence in the record that Thelma Miller executed any such order after Gray was added as a joint owner.

of the account following Miller's death, as the personal representative asserts. The answer to that question is key because the Act specifies that the six-year general statute of limitations for civil actions applies to all actions brought under it. 33 M.R.S. 1023(3) (2007). Accordingly, if the cause of action accrued in November 1994, then it became time-barred in November 2000, more than four years before the complaint was filed. If the cause of action did not accrue until Miller's death in 2004, then it survives.

■ [¶ 25] A cause of action accrues "at the time judicially cognizable injury is sustained." *Gile v. Albert*, 2008 ME 58, ¶ 8, 943 A.2d 599, 601 (quotation marks omitted). The Act compels a court "[w]hen [it] finds that a transfer of property ... was the result of undue influence [to] grant appropriate relief enabling the elderly dependent person to avoid the transfer." 33 M.R.S. 1023(2) (2007). If the elderly person has a guardian or another legal representative, that person may file an improvident transfer suit on the elder's behalf.[5] 33 M.R.S. 1023(1) (2007).

[¶ 26] In *Estate of Sylvester v. Benjamin*, we referred to the point at which a party was added to an account as a joint tenant as "the time of the transfer[ ]." 2001 ME 48, ¶ 4, 767 A.2d 297, 299. Here, while Gray testified that he did not withdraw any money from the savings account during Miller's lifetime, his right to do so had been created by November 1994 when he acquired joint ownership. Because Miller or her legal representative could have brought suit to rescind Gray's joint owner-ship of the account in November 1994, that is when a judicially cognizable injury, if one occurred, was sustained. As that potential injury occurred more than six years before the personal representative filed her complaint, the cause of action is time-barred.

### D. Unjust Enrichment

■ [¶ 27] The personal representative's complaint also claims that if Robert Gray is now the owner of the savings account, then his retention of it results in an unjust enrichment. In its judgment, the Probate Court suggested that an unjust enrichment occurred without making an explicit finding to that effect, then ultimately concluded that it need not decide the question because of its holding that the account was an estate asset. As with the improvident transfer claim, Gray denies that he benefited from an unjust enrichment, and asserts that the claim is time-barred. Once again we begin by addressing Gray's statute of limitations defense.

[¶ 28] We have applied the general six-year statute of limitations in civil cases to unjust enrichment claims. 14 M.R.S. 752 (2007); *see Me. Mun. Employees Health Trust v. Maloney*, 2004 ME 51, ¶ 9, ¶ 11, 846 A.2d 336, 339–40 (referring to six-year statute of limitations in discussing unjust enrichment claim; stating that section 752 "applies to all civil actions, including equitable claims" (quotation marks omitted)); *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269, 271 (stating that unjust enrichment damages analysis "is based on principles of equity, not contract" (quotation marks omitted)).

---

5. Prior to 2003, only the dependent elder or their legal representative could bring an action. *See Estate of Sylvester v. Benjamin*, 2001 ME 48, ¶ 18, 767 A.2d 297, 303 (holding that a cause of action under the Act "expires upon the death of the elderly person"). In 2003, the Legislature added "the personal representative of the estate" to the list of persons eligible to bring an action under the Act. P.L.2003, ch. 236, § 2 (effective Sept. 13, 2003) (codified at 33 M.R.S. § 1023(1) (2007)).

[¶ 29] An unjust enrichment claim is brought to recover "the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Paffhausen*, 1998 ME 47, ¶ 6, 708 A.2d at 271. To establish her claim, the personal representative was required to show that: (1) Miller conferred a benefit on Gray; (2) Gray had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under circumstances that make it inequitable for Gray to retain the benefit without payment of its value. *See Me. Eye Care Assocs. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712.

[¶ 30] Once again, the statute of limitations issue turns on when a judicially cognizable injury was sustained. In this case the injury, if there was one, had occurred by November 1994 when Miller added Gray to the savings account as a joint owner.[6] That is the point at which Gray could have accessed the funds in the account if he wished, and that is the point at which Gray stood to take ownership of the account ahead of the estate upon Miller's death. Contrary to the personal representative's argument, no benefit was conferred on Gray in 2004 when Miller died, because by then he had held equal rights to the account for almost ten years. Because the injury asserted by the personal representative occurred more than six years before the complaint alleging unjust enrichment was filed, the claim is time-barred.

**E. Attorney Fees**

[¶ 31] Finally, we address Gray's contention that the Probate Court erred in declining to award him costs and attorney fees. The court found that:

On balance ... Mr. Gray's actions have hurt more than helped. His obstructing the inventorying process, his racing to the bank to withdraw the money despite his own admitted questions concerning his rights to this money, his delaying the pre-trial discovery process and his also causing court delays, such actions and reactions do not find this Court today thinking that justice would be served at all by now rewarding these dilatory behaviors with attorney's fees.

The applicable statute provides that:

In contested cases in the original or appellate court of probate, costs may be allowed to either party, including ... attorney's fees, to be paid to either or both parties, out of the estate in controversy, as justice requires.

18–A M.R.S. 1–601 (2007).

[¶ 32] We review the trial court's decision to award or deny attorney fees solely for an abuse of discretion. *Estate of Deschenes*, 2003 ME 35, ¶ 16, 818 A.2d 1026, 1031. It is not necessarily an abuse of discretion to deny an award even to a party who did not initiate the action and then prevails.[7] *See id.* ¶ 15–16, 818 A.2d at 1030–31. Here, the court's stated reasons for denying Gray's request for costs and fees have support in the record, and the court was in the best position to assess the impact of Gray's actions on the litigation.

---

6. The record clearly reflects that Gray was aware of the fact that he had been added to the account almost from the time of the account's creation.

7. Should the trial court decide to revisit the issue of attorney fees in light of our finding that Gray has prevailed in his claim to the savings account, it has the discretion to do so. We only point out that a judgment in favor of the party requesting attorney fees is not an automatically decisive factor.

Its decision to deny his request was well within the court's discretion.

The entry is:

Judgment as to the savings account vacated; remanded for entry of judgment declaring Robert Gray to be the owner of the savings account. In all other respects, judgment affirmed.