2012 ME 83

**Robert L. GRAY**

v.

**TD BANK, N.A.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 27, 2011.

Decided: June 26, 2012.

Robert E. Sandy, Jr., Esq., Sherman & Sandy, Waterville, for appellant Robert L. Gray.

David B. McConnell, Esq., and Dawn M. Harmon, Esq., Perkins Thompson, P.A., Portland, for appellee TD Bank, N.A.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

LEVY, J.

[¶ 1] Robert L. Gray appeals from a judgment of the Superior Court (Waldo County, *Hjelm, J.*) granting TD Bank, N.A.'s motion to dismiss his complaint asserting claims for breach of contract, negligence, and punitive damages. We affirm the dismissal of Gray's contract and punitive damages claims, but we vacate the judgment with respect to the negligence claim.

## I. BACKGROUND

[¶ 2] This case arose from events that resulted in a Probate Court judgment against Gray, which we affirmed in relevant part in *Estate of Miller,* 2008 ME 176, 960 A.2d 1140. Unless otherwise noted, the following facts are taken from Gray's complaint. *See Gorham v. Androscoggin Cnty.,* 2011 ME 63, ¶ 2, 21 A.3d 115; *Bonney v. Stephens Mem'l Hosp.,* 2011 ME 46, ¶ 16, 17 A.3d 123.

[¶ 3] Gray's mother, Thelma M. Miller, opened a checking account at Peoples Heritage Bank sometime before September 1994. TD Bank, N.A., is the successor to Peoples Heritage Bank (collectively, "the Bank"). When Miller opened the account, she signed a signature card. The front of the card is undated, and the Bank did not retain a copy of the back of the card. Until October 1994, Miller received statements for the account addressed solely to her at her Searsport residence. Gray lived with Miller during this time. Beginning in November 1994, account statements were addressed to "Thelma M. Miller or Robert L. Gray" at the home they shared. Gray alleges that Miller executed an account maintenance form to add Gray as a joint owner of the account with right of survivorship. By 1994, the Bank used such forms rather than signature cards to open accounts or change their ownership, and it then recorded the information from the forms electronically.

[¶ 4] After Miller died in March 2004, the Bank informed Gray that he was a joint holder of the account and entitled to the funds therein. He met with a Bank employee at the Searsport branch on June 22. After reviewing the account's electronic record, which listed both Gray's and Miller's names, and upon presentation of Miller's death certificate, the employee had Gray sign an account maintenance form removing Miller's name from the account. In October 2004, Gray withdrew all of the funds in the account, totaling nearly $111,000, and deposited them in an account at another bank.

[¶ 5] Gray's sister, Roselyn Bean, served as personal representative of their mother's estate. Bean brought an action against Gray on behalf of the Estate in Waldo County Probate Court in 2005, alleging, among other claims, that the funds Gray had withdrawn from the checking account belonged to the Estate. As part of the pretrial process, Gray requested that the Bank produce all records related to the account from July 1, 1994 through July 1, 1995. The Bank replied that it did not have any records for this period. Later, in response to a pretrial subpoena requesting all ownership documents for the account, the Bank produced a copy of the front of the signature card and the account maintenance form that Gray had signed in 2004 to remove Miller's name from the account after her death.

[¶ 6] The Probate Court held a trial over four days between April and July 2007. A Bank representative testified that the monthly account statements, which were addressed to "Thelma M. Miller or Robert L. Gray," as well as other available

bank records, indicated that the checking account was held jointly by Gray with the right of survivorship.[1] However, she added that she "would definitely conclude that something is missing." She also testified that ownership changes would be reflected in a document kept with the original signature card, but that the Bank's records for the account did not include such a document. *Miller*, 2008 ME 176, ¶ 13, 960 A.2d 1140. As between account statements and the signature card, "she was clear that the signature card rather than the bank statement is the controlling document for determining account ownership." *Id.* ¶ 15.

[¶ 7] Based on the signature card, the Probate Court determined that Miller was the sole owner of the checking account and that the funds Gray had withdrawn were the property of the Estate. *Id.* ¶ 17. On appeal, we affirmed this portion of the judgment, holding that the Probate Court's finding on the ownership of the account was not clearly erroneous, explaining:

> Robert Gray testified that he had never seen a document making him a joint owner of the checking account, and he considered the money in the account to belong to his mother. He said that he had never spoken to her about the addition of his name to the statement, about the account's ownership, or about its disposition after her death. Gray said that he had never made any transactions in the account while Miller was alive. ... Although the bank representative's testimony was somewhat contradictory regarding the evidence of sole ownership established by the signature card versus the inference of joint owner-

ship suggested by the bank statement, her testimony nonetheless provided evidentiary support for the court's factual finding that the signature card proved Thelma Miller's sole ownership of the checking account.

*Id.* ¶¶ 16–17. Following our decision, Gray subpoenaed the Bank, again requesting all documents related to the ownership of the checking account, including printouts of electronic records. The Bank responded in January 2009 that it had not located any additional documents.

[¶ 8] Gray sued the Bank in March 2010, seeking compensatory and punitive damages for (1) breach of contract for failing to retain or produce in the Probate proceeding the records that would show Gray's joint ownership of the account, (2) negligence for failing to retain or produce those records, and (3) punitive damages based on the "deliberate conduct of the Bank in disposing of records showing that Mr. Gray was a joint owner of the checking account with right of survivorship at the time of the death of Mrs. Miller." The Bank filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), asserting that the applicable statute of limitations and the doctrine of collateral estoppel barred the complaint. The Superior Court granted the motion based on the doctrine of collateral estoppel in a thorough decision that reasoned:

> The final judgment entered against Gray in the Probate Court action establishes the specific factual point that he did not acquire an ownership interest in the checking account. Although there is not a complete identity of other issues

---

1. As we noted in *Estate of Miller*, the Bank representative also testified that Gray's name would not have been added to the account as a joint owner without "written documentation," and she thus inferred that Miller had asked the Bank to do so. 2008 ME 176, ¶ 15, 960 A.2d 1140. Our opinion, but not Gray's complaint, noted the representative's testimony that the account maintenance forms used to make such changes are retained for only two years, after which the information is retained electronically. *Id.*

underlying the two court actions (for example, the claims at bar are based on allegations against the Bank that were not included in the estate's Probate Court claim against Gray), that precise issue of ownership is common to both proceedings. That issue was actually adjudicated adversely to Gray in the prior case, thereby establishing this aspect of the collateral estoppel analysis.

[¶ 9] The court also found that Gray had a fair opportunity and incentive to litigate the issue before the Probate Court, noting, among other things, that the trial in the Probate Court had extended over four days and that Gray had initiated discovery requests in that case to obtain the Bank's records regarding the ownership of the checking account. The court concluded: "The Probate Court's judgment squarely and expressly found against Gray on the question of ownership, and, as the Law Court observed on appeal, that finding was properly grounded on the record evidence." This appeal followed.

## II. LEGAL ANALYSIS

[¶ 10] Collateral estoppel is the issue preclusion component of the principle of res judicata. It "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Penkul v. Matarazzo*, 2009 ME 113, ¶ 7, 983 A.2d 375 (quotation marks omitted). Collateral estoppel applies even where the two proceedings offer different remedies. *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 9, 940 A.2d 1097. Although collateral estoppel is an affirmative defense typically asserted in the answer to a complaint rather than a motion to dismiss, such a procedure is appropriate "if facts giving rise to the defense appear on the face of the complaint." *Munjoy Sporting & Athletic Club v. Dow*, 2000 ME 141, ¶ 17, 755 A.2d 531 (quotation marks omitted); M.R. Civ. P. 8(c), 12(b); *see also Sargent v. Sargent*, 622 A.2d 721, 722–23 (Me.1993); M.R. Civ. P. 7(b)(1)(C) (differentiating between (12)(b)(6) motions and those based on res judicata). The court's conclusion that collateral estoppel applies is a legal determination; our review of that conclusion is therefore de novo. *Penkul*, 2009 ME 113, ¶ 7, 983 A.2d 375.

[¶ 11] Gray contends that the court erred because (A) there was not a sufficient identity of the factual issues determined in the Probate proceeding and asserted in his complaint against the Bank, and (B) he did not have a fair opportunity to fully litigate the issues in the prior proceeding.

### A. Identity of Issues

[¶ 12] Gray argues that he should not be collaterally estopped from bringing his claims because the factual issues to be decided in this case—whether joint ownership records existed, whether the Bank was legally required to retain them, and whether it failed to do so—are not identical to the issues decided in the Probate proceeding, which included whether Gray was a joint owner of the account. He argues that because the Probate Court did not make explicit findings regarding the Bank representative's testimony that "something is missing," it did not necessarily decide whether joint ownership records once existed or whether the Bank failed to retain them.

#### 1. Contract Claim

[¶ 13] Count I of Gray's complaint, his breach of contract claim, is premised on his assertion that he was a joint owner of the account with a right of survivorship or that, in the alternative, he

was a third-party beneficiary of a contract between his mother and the Bank that he is entitled to enforce. However, Gray's claim of a contractual ownership interest in his mother's checking account was squarely presented to and resolved by the Probate Court. That court was presented with the same evidence that Gray cites in his present complaint—including the Bank representative's contradictory testimony, the competing inferences to be drawn from the bank statements and the signature card, and the fact that the Bank permitted Gray to remove Miller's name from the bank account after her death and withdraw its funds—and concluded that the weight of the evidence pointed against joint ownership. *See Miller*, 2008 ME 176, ¶¶ 6, 12–15, 17, 960 A.2d 1140.

[¶ 14] The Probate Court heard testimony about the status of the Bank's records and was aware that they may not have been complete. *See id.* ¶¶ 13, 15. Nevertheless, the court found the signature card to be controlling, rather than the conflicting testimony and exhibits, and we affirmed that determination. *Id.* ¶ 17. As we noted, we were "satisfied that the court found the checking account was solely owned by Thelma Miller," and thus that Gray was never made a joint owner of the account. *Id.* ¶ 18 n. 2. By finding Miller to be the sole owner of the checking account, the Probate Court necessarily, albeit implicitly, found that Gray had failed to prove the existence of a contract either making him a joint owner or making him a third-party beneficiary to an agreement between his mother and the Bank. *See Estes v. Smith*, 521 A.2d 682, 683 (Me. 1987) (stating that the plaintiff bears the burden of proving the existence of a contract).

[¶ 15] The subordinate factual questions that Gray raises in support of his argument on appeal are just that—subordinate questions that underlie the primary factual question of whether he had a contractual interest in his mother's checking account. In the absence of a motion for additional findings pursuant to M.R. Prob. P. 52, the law infers that the Probate Court considered all of the evidence—including the bank representative's testimony that "something is missing"—and decided these subordinate questions against Gray.[2] *See* M.R. Civ. P. 52; *Sutherland v. Morrill*, 2008 ME 6, ¶¶ 4–5, 940 A.2d 192 (noting that we will assume that the trial court found all of the facts needed to support its decision if those facts are supported by competent evidence). The first element of collateral estoppel—identity of issues—is established with respect to the breach of contract claim.

2. Negligence Claim

[¶ 16] Count II of Gray's complaint asserts that the Bank was negligent by its failure "to retain or produce records showing Mr. Gray's ownership of the checking account." A claim of negligence requires proof of a duty owed, breach of that duty, and an injury proximately caused by the breach. *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 8, 43 A.3d 948. The Probate Court's judgment determined that Gray had no contractual ownership interest in the bank account, but the court did not determine whether the Bank otherwise breached a duty it owed to Gray arising from his relationship with the Bank. Indeed, the Probate Court

**2.** The record of the Probate Court proceeding is not part of the record of this appeal. Gray has not suggested in his brief, however, that he moved for additional findings of fact and conclusions of law in the Probate proceeding on these subsidiary questions of fact and that his motion was denied.

was aware that the Bank treated Gray as a customer with respect to the checking account, but the court was not called upon to consider whether the Bank owed Gray any duties separate from those associated with a joint bank account. Rather, the probate proceeding addressed whether Gray had a legal claim to the checking account superior to that of the Estate, whether based on contract or the Probate Code.

[¶ 17] Gray's negligence claim may proceed if there is *any* set of facts suggested by Gray's complaint under which it would state a claim.[3] *See McCormick v. Crane*, 2012 ME 20, ¶ 5, 37 A.3d 295 ("We review de novo the legal sufficiency of a complaint when it has been challenged by a motion to dismiss[,] ... [and] we view the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." (quotation marks and citations omitted)); *Johnston v. Me. Energy Recovery Co.*, 2010 ME 52, ¶ 16, 997 A.2d 741 (stating that pursuant to Maine's notice pleading requirements, the complaint need only make a "short and plain statement of the claim" and "need not identify the particular legal theories that will be relied upon" (quotation marks omitted)).

[¶ 18] It is implicit in Gray's allegations that even if he were never a joint owner of the checking account, the Bank's record-keeping and disbursement to him of the account's funds led him to believe that he was. Because, prior to the probate pro-

ceeding, the Bank treated Gray as a customer with an interest in the checking account, it owed him a general duty as a customer and a duty with respect to that account. *See Davis v. R C & Sons Paving, Inc.*, 2011 ME 88, ¶ 16, 26 A.3d 787 ("[I]n tort, liability is grounded upon the *status* relationship between the parties." (quotation marks omitted)); *Estate of Cilley v. Lane*, 2009 ME 133, ¶ 20, 985 A.2d 481 ("[S]pecial relationships may create a duty of care based on these same factors—the closeness and nature of a pre-existing relationship between the parties and the measure of control."); *cf. Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 972 A.2d 1112, 1123 (2009) ("[I]t is clear that absent a special relationship, courts will typically bar claims of non-customers against banks." (quotation marks and alteration omitted)).

[¶ 19] Here, Gray has sufficiently alleged that the Bank's duty to him was to maintain adequate records to accurately reflect the ownership status of the checking account, including records that accurately reflected Gray's status and interest with respect to the account, and not to disburse to him account funds to which he had no rights. On the facts as alleged in Gray's complaint, which we accept as true for the purpose of the Bank's motion to dismiss, *see Johnston*, 2010 ME 52, ¶ 2, 997 A.2d 741, the Bank may have breached its duty by erroneously treating Gray as a joint owner without a proper basis to do so, thereby proximately causing Gray to detrimentally rely on the Bank's represen-

---

3. Because the court dismissed the complaint solely on the basis of collateral estoppel pursuant to M.R. Civ. P. 12(b)(6), the veracity of the complaint's factual allegations has not been tested in accordance with the requirements of M.R. Civ. P. 56. *See Johnston v. Me. Energy Recovery Co.*, 2010 ME 52, ¶¶ 2, 10, 997 A.2d 741 (noting that a motion to dismiss tests simply the "legal sufficiency" of the

complaint and that when reviewing such a motion "we accept the facts alleged in the complaint as true"); *see also Libner v. Me. Cnty. Comm'rs' Ass'n*, 2004 ME 39, ¶¶ 7–8, 845 A.2d 570 (noting that a motion to dismiss is treated as a motion for summary judgment when the court considers documents outside the pleadings).

tations of his ownership. Thus, Gray could potentially prove that the Bank's negligence proximately caused him to incur damages in an amount equal to the interest he is required to pay the estate on the principal funds that he has already repaid, and the reasonable attorney fees and costs he incurred in connection with the probate litigation regarding the checking account.

[¶ 20]   In short, Gray has alleged sufficient facts to show that the Bank may have owed him a duty as its customer, the Bank breached its duty by negligently leading him to believe that he held a joint interest in the account and that the funds were his, and the Bank's negligence proximately caused him to incur damages. Because the Probate Court did not adjudicate the factual issues related to this claim, including whether Gray's reliance on the Bank's representations was reasonable in light of all of the circumstances, Gray's negligence claim against the Bank is not barred by collateral estoppel.

B.   Opportunity to Litigate

■■■■   [¶ 21]   Because we hold that the first prong of the collateral estoppel analysis does not bar Gray's negligence claim, we evaluate the second prong— whether there was a full and fair opportunity to litigate in the prior proceeding— only in relation to his breach of contract claim. The factors to consider in determining whether Gray had a "full and fair opportunity to litigate" include:

> the size of the claim, the forum of the prior litigation, whether the issue was a factual or a legal one, the foreseeability of future suits, the extent of the previous litigation, the availability of new evidence, the experience of counsel, . . . [and] procedural opportunities available in the second suit that were unavailable in the first.

*Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 17, 989 A.2d 733 (quotation marks omitted); *see also* Restatement (Second) of Judgments § 29 (1982).

[¶ 22]   Gray had an incentive to litigate the issue of his joint ownership of the bank account due to the large amount of money at issue, and the Probate Court was a forum that had the means to award him relief by upholding his claim to the money if he were successful. *See* 18-A M.R.S. § 1-302 (2011) (discussing Probate Court's subject matter jurisdiction and its "full power to make orders, judgments and decrees"). Procedurally, Gray had all of the tools of discovery at his disposal in the Probate Court to examine the Bank's records. *See* M.R. Prob. P. 26–37. The ownership of the checking account was one of the primary issues considered by the Probate Court over the course of the four-day trial. Gray had a full and fair opportunity to litigate his claim of ownership of the account in the probate proceeding.

[¶ 23]   Because the factual question at the center of Gray's breach of contract claim against the Bank is identical to the question adjudicated and determined in the Probate Court, and because Gray had a full and fair opportunity to litigate in that forum, he is collaterally estopped from relitigating that question in this proceeding. *See Beal*, 2010 ME 20, ¶ 17, 989 A.2d 733. However, for the reasons discussed above, Gray's negligence claim presents factual issues distinct from those that were previously adjudicated, and he may therefore proceed with that claim. Because the allegation of a failure to maintain adequate records does not rise to the level of conduct necessary to support a claim for punitive damages, we affirm the dismissal of that claim.

The entry is:

Judgment affirmed as to Count I (breach of contract) and Count III (puni-

tive damages) of the complaint; judgment vacated as to Count II (negligence); case remanded for further proceedings consistent with this opinion.