Majority: SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent: JABAR, J.
MEAD, J.
[¶ 1] In August 2013, Marie Gunning brought suit in the Superior Court (Cumberland County), against the anonymous publisher and writer(s) (collectively John Doe) of News as Viewed From a Crow’s Nest (Crow’s Nest), a publication distributed locally in Freeport, Maine, and accessible on the Internet,[1] which Gunning claimed had published defamatory statements about her in several of its issues. After a California court quashed a subpoena that Gunning served on the Crow’s Nest’s website host seeking to identify Doe, the Superior Court (Warren, J.) dismissed her complaint without prejudice for failure to effect service on the defendants. Gunning appeals from that judgment. The publisher of the Crow’s Nest (Doe # 1) cross-appeals, agreeing with the court that Gunning is estopped by the California judgment from continuing to seek the Does’ identities, and additionally contending that Gunning cannot force the Does to reveal their identities because the Crow’s Nest is both nonactionable constitutionally protected parody and protected anonymous speech. We conclude that Gunning is estopped by the prior California judgment, and we affirm the judgment of the Superi- or Court without reaching Doe’s alternative arguments.
I. FACTS AND PROCEDURE
[¶ 2] In 2011, Gunning ran for the Free-port Town Council and was defeated. One week later, the Crow’s Nest, which declares under its masthead that it is “a parody look at the news,” published an “Election Special” issue, which-included a photograph of the “Wicked Witch of the West” character from the classic movie The Wizard of Oz next to Gunning’s name, along with the caption “Aka: ‘Gunner Gunning1 ‘Miss Prozac 2003,’ ” and several purported quotes from Gunning. Several other people with apparent ties to Freeport were treated similarly. Gunning’s complaint against Doe alleged three counts of libel and one count each of false light and intentional infliction of emotional distress based on the statements concerning her in the “Election Special” issue, as well as those appearing in fifteen subsequent issues of the Crow’s Nest.
[¶3] Gunning served a California subpoena on the Crow’s Nest’s website host, seeking the names, email addresses, and IP addresses of anyone associated with the publication’s website. Does # 1 and # 2, who filed written declarations in the California Superior Court stating that they were the owner and writer, respectively, of the Crow’s Nest website, moved to quash the subpoena in that court, asserting that the Crow’s Nest was constitutionally protected parody and that they had a constitutional right to speak anonymously. In a decision issued on January 24, 2014, the. court granted the motion to quash, ruling that
[Gunning] must make a prima facie showing of libel. ... [She] failed to make this prima facie showing. The Court finds ‘that while the content of the Crow’s Nest could be seen as rude and distasteful, taking into consideration the *1230 context and contents of the statements at issue, it is a parody. The speech at issue in the Crow’s Nest is protected under the First Amendment of the U.S. Constitution. The statements are not actionable speech such that the identities of the website owner and persons who comment or otherwise publish material printed in or posted online at the Crow’s Nest must be revealed pursuant to the subpoena.
Doe v. Gunning, No. CPF-13-513271 (Cal. Super. Ct. S.F. County Jan. 24, 2014).
[¶ 4] Gunning did not appeal the California judgment. Three months after that judgment issued, Gunning served a Maine subpoena on a Town of Freeport employee in order to depose him to learn whether he was the writer for the Crow’s Nest. The employee objected to the subpoena and provided an affidavit averring that he had never had anything to do with the Crow’s Nest and had no knowledge of anyone who did. Fourteen months later, the employee, stating that Gunning again sought to depose him, moved to quash the subpoena on the grounds that Gunning was collaterally estopped by the California judgment from further discovery seeking to learn the identities of Does # 1 and # 2, and that her complaint failed to state a claim that could survive First Amendment scrutiny.[2] Doe #1 separately moved to quash the employee’s subpoena and “to bar Gunning from issuing any other process to compel the disclosure of the anonymous speakers named in her Complaint, and to enter an order dismissing the Complaint.”
[¶ 5] On October 22, 2015, the Superior Court issued an order granting the motion to quash and dismissing Gunning’s complaint without prejudice for failure to effectuate service pursuant to M.R. Civ. P. 3.[3] The court said that “[ljeft to its own devices” it would “conclude that [GJunning has set forth a prima facie case and that she has submitted evidence sufficient to support the elements of her libel claim.” The court found, however, that although it “would be inclined to find that there is at least a factual dispute as to whether [one specific] description of Gunning ... would reasonably be understood to constitute a parody” and therefore be entitled to First Amendment protection,
the court is not writing on a clean slate on that issue. ... [WjHether or not this court agrees with the California ruling, the issue of whether Gunning has made the necessary prima facie showing [of an actionable claim] was actually litigated in California, was decided adversely to Gunning, and was essential to the outcome of the California action. ... No appeal was sought. Accordingly, the California decision is entitled to collateral estoppel effect and precludes Gunning from relitigating the same issue here in Maine.
[¶ 6] Accordingly, the court quashed the subpoena and dismissed the complaint for lack of service on the Does. Gunning appealed and Doe # 1 cross-appealed.
II. DISCUSSION
[¶ 7] We first address the question of whether Gunning is precluded from re-litigating in Maine the issue of the constitutional protection afforded to the statements. made about her in the Crow’s Nest. If she is, then the California court’s deter- *1231 mmation that the statements are parody protected by the First Amendment controls, and Gunning’s libel complaint fails to state an actionable claim.[4] In that event, the trial court did not abuse its discretion in quashing the Freeport employee’s subpoena, and we need not reach the Does’ contention that the statements in the Crow’s Nest, if reviewed de novo, are entitled to protection either as constitutionally protected parody or as anonymous speech. See State v. Marroquin-Aldana, 2014 ME 47, ¶ 33, 89 A.3d 519 (“We review a court’s decision on a motion to quash for an abuse of discretion.”).
[¶ 8] The California judgment is conclusive to the extent that it quashed the subpoena issued to the Crow’s Nest’s website host, a result concerning a discrete collateral issue related to Gunning’s suit that she does not challenge. See Baker v. Gen. Motors Corp., 522 U.S. 222, 233, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) (holding that pursuant to the Full Faith and Credit Clause, “the judgment of the rendering State gains nationwide force”). Maine law, however, determines whether the judgment acts to foreclose Gunning’s claims in this State. See Restatement (Second) of Conflict of Laws § 95 cmt. c (Am. Law Inst. Supp. 1989 revisions) (“[Ljocal law of the State where the judgment was rendered ... will be consulted to determine whether the judgment affects the claim or only some incidental issue. If under this law the judgment was not on the merits and settled only some incidental issue ... the judgment will be held conclusive in other States only as to the issue decided and the plaintiff will remain free to maintain an action on the original claim.”).
[¶ 9] In beginning that analysis, we have explained, applying well-established law, that
[collateral estoppel is the issue preclusion component of the principle of res judicata. It prevents the relitigation of factual issues already decided if the identical issue was determined by a pri- or final judgment, and the party es-topped had a fair opportunity and incentive to litigate the issue in a prior proceeding. ... The court’s conclusion that collateral estoppel applies is a legal determination; our review of that conclusion is therefore de novo.
Gray v. TD Bank, N.A., 2012 ME 83, ¶ 10, 45 A.3d 735 (alteration and quotation marks omitted) (emphases added); see Macomber v. MacQuinn-Tweedie, 2003 *1232 ME 121, ¶ 22, 834 A.2d 131 (stating that “[w]e have long recognized that the doctrine of res judicata has two prongs,” including “[i]ssue preclusion, also referred to as collateral estoppel,” and claim preclusion).
A. Identical Issue
[¶ 10] Concerning the first element, the issue decided by the California court and that to be decided by Maine courts if Gunning is not estopped from relitigating it is the same—did Gunning make out a prima facie showing of libel, or were the statements made about her in the Crow’s Nest shielded by the First Amendment from being the basis for a libel claim. The trial court correctly found that “Gunning previously litigated that issue in California!;.]”
B. Final Judgment
[¶ 11] Gunning vigorously contests the court’s determination that “[t]he decision of the California Superior Court constituted a final decision on Gunning’s application for interstate discovery.” Nonetheless, the only issue that the California court was asked to decide was whether the subpoena directed to the Crow’s Nest’s website host should be quashed. Once it did so, there was nothing left for the California court to consider. See Fitzgerald v. Bilodeau, 2006 ME 122, ¶ 4, 908 A.2d 1212 (“[A] judgment is final, and not interlocutory, when: (1) the trial court’s action fully decides and disposes of the whole matter leaving nothing further for the eonsider-ation and judgment of the trial court; and (2) no subsequent proceedings in the case will render the appellate court’s decision immaterial.” (quotation marks omitted)). The final provision in the California court’s order and the final notation in the docket entries concern the resolution of costs and attorney fees involved in adjudicating the motion—indicative of a finished case.
[¶ 12] Gunning’s argument that she is not estopped because appellate review of the California judgment was effectively unavailable to her is not persuasive. She points to the Restatement (Second) of Judgments § 28 (Am. Law Inst. 1982), which provides that “relitigation of [an] issue in a subsequent action between the parties is not precluded ... [when] [t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action.” The first comment to section 28 elaborates: “There is a[n] ... exception to the rule of preclusion when ... appeal does not lie[ ] by ... extraordinary writ[.]” Id. cmt. a.
[¶ 13] The Restatement limits the exception, however, in saying that “[t]he [section 28] exception ... applies only when review is precluded as a matter of law. It does not apply in cases where review is available but is not sought.” Id. (emphasis added). Here, review of the order quashing the subpoena was available by extraordinary writ pursuant to the California Code of Civil Procedure,[5] but Gunning opted not to seek such review. Accordingly, the Restatement exception to the collateral estop- *1233 pel doctrine that is invoked when no appellate review is available does not apply.
[¶ 14] Although Gunning argues that she would have been required to show “immediate harm” in order to obtain an extraordinary writ and chose not to file a petition because she believed she would have been unsuccessful, it was for the California courts, and not Gunning, to say that the likely termination of her Maine lawsuit was not a qualifying “immediate harm,” or that some other ground for granting a writ under California law did not apply.
[¶ 15] Like Gunning, the dissent goes to great lengths to predict an adverse ruling by California’s appellate courts had Gunning pursued an extraordinary writ. Dissenting Opinion ¶¶ 23-26. That would be an unnecessary exercise if Gunning had requested a writ, as was her right. See Cal. Civ. Proc. Code § 2029.650(a) (Deering, LEXIS through ch. 4 of the 2017 Reg. Sess.). In any event, we are not a California court, and it is indisputably true that Gunning did not pursue the avenue of appellate review available to her under California law—the venue that she chose. Had she done so, in addition to having a stronger argument in this appeal, that state’s appellate courts would have had an opportunity to address what Gunning and the dissent contend are serious errors of law in the California Superior Court’s decision. See Dissenting Opinion ¶ 35.
C. Fair Opportunity and Incentive
[¶ 16] Gunning asserts that although in furtherance of her Maine lawsuit she caused a subpoena to be served in California and then fully litigated the Does’ motion to quash it, she “did not have a full and fair incentive to litigate the issue in the California court” because “she had another avenue available to her from which to seek disclosure of the Crow’s Nest authors: the depositions that were being sought in Maine.” That position is counterintuitive at best. A plaintiff in Gunning’s situation would be very motivated to litigate a motion that (1) presumably involved considerable time and expense to pursue; (2) would have potentially yielded all of what she continues to seek had it succeeded, namely the identities and contact information of the website’s host and contributors; and (3) would predictably lead, if the motion to quash were granted, to precisely what occurred—an effort to collaterally estop Gunning from relitigat-ing in Maine the central issue of whether the Crow’s Nest statements were actionable at all.
[¶ 17] The Restatement provides, in a comment captioned “[Hack of fair opportunity to litigate in the initial action,” that
the court in [a] second proceeding may conclude that issue preclusion should not apply because the party sought to be bound did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the first proceeding. Such a refusal to give the first judgment preclusive effect should not occur without a compelling showing of unfairness, nor should it be based simply on a conclusion that the first determination was patently erroneous.
Restatement (Second) of Judgments § 28 cmt. j. Gunning does not make any “compelling showing of unfairness” sufficient for us to conclude that she lacked opportunity or incentive to fully litigate this matter in California.
[¶ 18] Furthermore, in charging that our decision is unfair to Gunning because “we are allowing the California law to prevent [her] from pursuing her defamation case in this state,” Dissenting Opinion ¶ 37, the dissent ignores the fact that Gunning had a full opportunity to litigate the issue at hand in the venue of her choosing. Had Gunning chosen to prosecute this Maine action by pursuing discovery in Maine’s courts—for example if she had sought to *1234 depose the Freeport employee before serving a subpoena in California,[6] or if she had withdrawn the subpoena when the Does’ California motion to quash raised a potentially dispositive issue—then the Superior Court would have decided the Freeport employee’s motion to quash based on Maine law, and either party could have appealed an adverse ruling to this Court. Instead, Gunning opted, of her own volition, to litigate a substantive issue in the California courts, presumably hoping for a favorable result. After receiving an unfavorable ruling, and choosing not to pursue an appeal of that ruling, she cannot simply elect to relitigate the very same issue involving the same parties in another jurisdiction, hopeful of obtaining a more favorable result. Such is the long-standing, well-established doctrine of collateral estoppel. See Gray, 2012 ME 88, ¶ 10, 45 A.3d 735.
D. Conclusion
[¶ 19] Because the issue decided by the California court in a final judgment was the same issue that Gunning seeks to have a Maine court revisit, namely whether the Crow’s Nest enjoys constitutional protection sufficient to foreclose her libel claim, and because Gunning had both opportunity and incentive to litigate that issue in California, she is estopped from relitigating it in the Maine action. See id. Accordingly, the trial court did not abuse its discretion in quashing the subpoena served on the Freeport employee, or in dismissing Gunning’s complaint for lack of service on the defendants as a result.[7] See Marroquin-Aldana, 2014 ME 47, ¶ 33, 89 A.3d 519; M.R. Civ. P. 3. Having concluded that the court did not err in finding that Gunning is precluded from relitigating the dispositive issue, we do not address the question raised in the cross-appeal of whether on de novo review we would reach the same conclusion as did the California court, and we offer no opinion as to whether the trial court correctly articulated Maine law concerning the extent to which anonymous speech is protected.[8]
The entry is:
Judgment affirmed.

. Doe’s brief states that the Crow’s Nest is no longer available on the Internet.

. The court ruled that the employee’s standing to make those arguments was not at issue because Doe # 1 also moved to quash the subpoena.

. Although the Rule ordinarily requires service "within 90 days after the filing of the complaint,” M.R. Civ. P. 3, the court explained that an extension of that deadline was implicit in its discovery orders in the case.

. The elements of a libel claim are "a false and defamatory statement concerning another; an unprivileged publication to a third party; fault amounting at least to negligence on the part of the publisher; and either ac-tionability of the statement irrespective of special harm or the existence of special harm caused by the publication.” Cole v. Chandler, 2000 ME 104, ¶ 5, 752 A.2d 1189 (list headings omitted). Gunning’s false light claim is similar, except that it involves propagating defamatory information through "publicity” rather than by "publication.” Id. ¶ 17. If the statements in the Crow’s Nest are constitutionally protected, then they are not "unprivileged,” and Gunning cannot satisfy the second element of a libel claim. See Simmons, Zillman & Gregory, Maine Tort Law § 13-11 at 13-19 (2004 ed.) (“[A defamation] action that meets all state common law requirements for recovery may fail because a recovery for the plaintiff would unconstitutionally abridge the freedom of speech and press.”). If Gunning’s libel claim fails for that reason, her claim for intentional infliction of emotional distress fails as well. See Shay v. Walters, 702 F.3d 76, 83 (1st Cir. 2012) ("The Supreme Court has made it pellucid that a failed defamation claim cannot be recycled as a tort claim for negligent or intentional infliction of emotional distress.”); Ault v. Hustler Magazine, 860 F.2d 877, 880 & n.1 (9th Cir. 1988) ("There is no independent cause of action for intentional infliction of emotional distress based on the very same acts which are insufficient to support an action for defamation.”), cert. denied, 489 U.S. 1080, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989).

. The California Code of Civil Procedure provides: "If a dispute arises relating to discovery ... any request ... to enforce, quash, or modify a subpoena, or for other relief may be filed in the superior court in the county in which discovery is to be conducted .,.. ” Cal. Civ. Proc. Code § 2029.600(a) (Peering, LEXIS through ch. 4 of the 2017 Reg. Sess.), Thereafter, “[i]f a superior court issues an order ... resolving a petition under Section 2029.600 ... a person aggrieved by the order may petition the appropriate court of appeal for an extraordinary writ." Cal. Civ. Proc, Code § 2029.650(a) (Peering, LEXIS through ch. 4 of the 2017 Reg. Sess.).

. In that event, if the Does had intervened and the Maine court ruled that Gunning had made out a prima facie case of libel, that judgment would have had preclusive effect in California.

. Gunning does not challenge the court’s statement that, by agreement, if the subpoena were quashed then she "had no further avenues to pursue disclosure of the identities of John Does # 1 and # 2.”

. Although the trial court went to considerable lengths to set out the analysis that it would have applied had it been “writing on a clean slate” on the issue of whether the Crow’s Nest's statements concerning Gunning constituted actionable defamation, including citing a test articulated in Dendrite International, Inc. v. Doe, 342 N.J.Super. 134, 775 A.2d 756, 760-61 (2001), that discussion was dicta given the court’s ultimate conclusion that Gunning was estopped by the California decision. We have previously made mention of Dendrite but have not adopted it, and we do not do so today. See Fitch v. Doe, 2005 ME 39, ¶¶ 26-2.7, 869 A.2d 722 ("Because Doe failed to raise the issue in the trial court, we decline at this time to consider the extent to which the First Amendment affects the consideration of motions to disclose information about anonymous ISP subscribers.”). Thus, the dissent’s discussion of the trial court's Dendrite analysis, and its declaration that "we have not addressed whether the Dendrite ‘heightened burden’ or some other procedural hurdle at the commencement of the suit will be the law of our state,” Dissenting Opinion ¶ 34, simply create and then attack a straw man. See supra ¶ 7. We take no issue with the dissent's appeal to sovereignty when it says that "[t]he law in this area is evolving and we should be making our own decision as to what is the best policy for Maine,” Dissenting Opinion ¶ 39, but today’s opinion does not have the effect that the dissent fears. The California decision is controlling only in this case, and then only because that is where Gunning chose to litigate. In the future, the *1235 Legislature is free to make any policy judgment in this area that it deems fit within constitutional constraints, and, contrary to the dissent's accusation, see Dissenting Opinion ¶¶ 28, 37, 39, our jurisprudence remains very much our own.