2005 ME 39

**Ronald FITCH**

v.

**John or Jane DOE # 1.**

Supreme Judicial Court of Maine.

Argued: Jan. 11, 2005.

Decided: March 18, 2005.

Thomas J. Connolly, Esq. (orally), Portland, for plaintiff.

George J. Marcus, Esq. (orally), Jennie L. Clegg, Esq., Marcus, Clegg & Mistretta P.A., Portland, for defendant.

Paul Alan Levy, Esq. (orally), Public Citizen Litigation Group, Washington, DC, Zachary L. Heiden, Esq., Maine Civil Liberties Union, Portland, Cindy Cohn, Esq., Electronic Frontier Foundation, San Francisco, CA, for amici curiae.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] John or Jane Doe appeals an order entered in the Superior Court (Cumberland County, *Warren, J.*) directing Time Warner Cable, Inc., to disclose identifying information about a subscriber who sent an e-mail message from an account using the name of Ronald Fitch. Fitch sought the disclosure as part of a complaint he filed against Doe alleging, inter alia, that the sender of the message misappropriated his identity. Doe contends that (1) the court improperly concluded that Doe consented to disclosure; (2) the disclosure is forbidden by the Cable Communications Policy Act of 1984, 47 U.S.C.A. § 551 (West 2001 & Supp.2004); and (3) the First Amendment requires an additional determination before the court orders Doe's identity revealed.[1] Fitch argues that Doe's appeal is interlocutory in nature and not subject to review.

[¶ 2] Because Doe's appeal comes within an exception to the final judgment rule, we consider the merits of the case. Although we agree with Doe that the court erred in finding that Doe consented to disclosure, we also conclude that disclosure is authorized by 47 U.S.C.A. § 551(c)(2)(B) (West Supp.2004). Because the First Amendment issue was not raised below, we do not address it here. Accordingly, we affirm.

I. BACKGROUND

[¶ 3] On December 24, 2003, a message purporting to be from the e-mail address of "Ronald Fitch" arrived in the e-mail accounts of several members of the Board of Directors of the Great Diamond Island Cove Association. The message contained the following message:

---

1. The Court was provided with a joint *amicus* brief from Public Citizen, the Electronic Frontier Foundation, and the Maine Civil Liberties Union supporting the First Amendment argument.

One and all

Thank you all for the continued good work.

Ron.

Appended to the message was a roughly-sketched cartoon, featuring a man, woman, and large dog posed in front of a sign reading, "Welcome to Paradise."

[¶ 4] On February 4, 2004, Fitch filed a complaint in the Cumberland County Superior Court, alleging that the person who sent the message had misappropriated his identity, violated his privacy, portrayed him in a false light, inflicted emotional distress, and committed fraud. Fitch asserted that the message was sent "for the purpose of causing ridicule and to disparage the reputation and/or social standing" of Fitch.[2] Because Fitch did not know the identity of the person who sent the e-mail, the complaint named John or Jane Doe as the defendant. On the same day that the complaint was filed, Fitch filed a motion to compel disclosure of information about the user of the e-mail account from Time Warner Cable, Inc., an Internet service provider (ISP). Time Warner refused to release the information without a court order that referenced 47 U.S.C.A. § 551, a provision in the Cable Communications Policy Act of 1984 that controls cable companies' use of subscriber information. Along with the disclosure motion, Fitch filed a motion to extend the time for service of process on the defendant until after disclosure was made.

[¶ 5] The court granted the motion for extension of time for service to sixty days after disclosure. The court also ordered Fitch to serve a copy of the motion for disclosure on Time Warner, including the time and date of the scheduled hearing. After Time Warner was served with the motion, Doe's counsel made an appearance on behalf of his client in opposition to the motion. Without objection by Fitch, the court allowed the appearance by counsel for the anonymous subscriber for purposes of opposing the disclosure motion. Time Warner did not enter an appearance, and did not oppose the motion for disclosure.

[¶ 6] Counsel for Fitch and Doe filed memoranda with the court supporting their positions on disclosure. The last memorandum filed by Fitch in response to Doe's memorandum of opposition included, as an attachment, a copy of what Fitch identified as the standard agreement between Time Warner and its subscribers.

[¶ 7] The court ordered Time Warner to disclose the information it had regarding the e-mail account. Citing the language of the document Fitch submitted with his reply memorandum, the court determined that Time Warner subscribers were on notice that they consented to the release of information "to comply with criminal or civil legal process." The court noted that while Fitch had not tendered the actual agreement between Doe and Time Warner, he could not "be expected to do so where he d[id] not have any access to that agreement and w[ould] not have such access unless the court grant[ed] his application." The court found that 47 U.S.C.A. § 551 is inapplicable when "the cable operator has the prior written or electronic consent of the subscriber." Because the court found that Doe consented to disclosure, it declined to consider whether the information was subject to disclosure under the other exceptions to § 551.

[¶ 8] Doe filed a notice of appeal and the trial court temporarily stayed its disclosure order to allow Doe to file a request

---

**2.** At oral argument, Fitch's attorney suggested that one of the characters in the cartoon was drawn in a way to mock the appearance of his client's wife, who had been injured in an accident.

for a stay pending appeal to this Court. We granted that stay. While the appeal was pending, Time Warner tendered to the Superior Court a sealed envelope containing the information it had about Doe.

## II.  DISCUSSION

### A.  Final Order

■ [¶ 9] As an initial matter, Fitch argues that Doe's appeal is interlocutory, and therefore not subject to appellate review. As a general matter, a party may not appeal before a final judgment is rendered in a case. *Austin v. Universal Cheerleaders Ass'n,* 2002 ME 174, ¶ 4, 812 A.2d 253, 255. There are several exceptions to the final judgment rule, however, including the "death knell" exception. *Id.* ¶ 4, 812 A.2d at 256. Under the "death knell" exception, parties may appeal an interlocutory order if "substantial rights of a party will be irreparably lost if review is delayed until final judgment." *Moffett v. City of Portland,* 400 A.2d 340, 343 n. 8 (Me.1979).

■ [¶ 10] In *Moffett,* we determined that the final judgment rule did not bar the immediate appeal of an order to disclose information pursuant to the Freedom of Access Act. *Id.* at 343 n. 8. We noted that denial of the opportunity to appeal would make a later appeal moot, because the information at issue would already have been released. *Id.* Such is the case here, where disclosure of Doe's identity will strip Doe of anonymity, making a later appeal moot. *See also Melvin v. Doe,* 575 Pa. 264, 836 A.2d 42, 46–50 (2003) (finding, on nearly identical facts, that an order requiring an ISP to disclose information about its subscriber may be appealed under the related "collateral order" exception).

[¶ 11] Because the disclosure order comes within an exception to the final judgment rule, we decline to dismiss Doe's appeal and address the merits.

### B.  The Cable Communications Policy Act of 1984

[¶ 12] The Cable Communications Policy Act of 1984 restricts cable providers from releasing information about their subscribers. *See* 47 U.S.C.A. § 551(c) (West 2001 & Supp.2004).[3]  Because the Act predates

---

3.  Section 551(c) states:
 (c) Disclosure of personally identifiable information
  (1) Except as provided in paragraph (2), a cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator.
  (2) A cable operator may disclose such information if the disclosure is—
  (A) necessary to render, or conduct a legitimate business activity related to, a cable service or other service provided by the cable operator to the subscriber;
  (B) subject to subsection (h) of this section, made pursuant to a court order authorizing such disclosure, if the subscrib-

er is notified of such order by the person to whom the order is directed;
  (C) a disclosure of the names and addresses of subscribers to any cable service or other service, if—
  (i) the cable operator has provided the subscriber the opportunity to prohibit or limit such disclosure, and
  (ii) the disclosure does not reveal, directly or indirectly, the—
  (I) extent of any viewing or other use by the subscriber of a cable service or other service provided by the cable operator, or
  (II) the nature of any transaction made by the subscriber over the cable system of the cable operator; or
  (D) to a government entity as authorized under chapters 119, 121, or 206 of Title 18, except that such disclosure shall not include records revealing cable subscriber selection of video programming from a cable operator.

the rise of the Internet, courts have come to differing conclusions regarding the extent to which it regulates cable companies that provide Internet service. *See AT&T Corp. v. City of Portland,* 216 F.3d 871, 877 (9th Cir.2000) (finding that provisions of the Act do not apply to broadband Internet service), *but cf. MediaOne Group, Inc., v. County of Henrico,* 97 F.Supp.2d 712, 715 (E.D.Va.2000) (concluding that cable modem service is covered by the Act), *aff'd on other grounds,* 257 F.3d 356, 365 (4th Cir.2001).

[¶ 13] Doe argues that § 551(c) prohibits disclosure of the information held by Time Warner. Because § 551(c) only restricts "cable operators" from disclosing personally identifiable information, disclosure is prohibited only if Time Warner, Inc., qualifies as a cable operator. Section 551 defines a cable operator as including, "in addition to persons within the definition of cable operator in § 602,[4] any person who

(i) is owned or controlled by, or under common ownership or control with, a cable operator, and (ii) provides any wire or radio communications service." 47 U.S.C.A. § 551(a)(2)(C) (West 2001).

[¶ 14] The definitions contained in § 551(a)(2) were added by an amendment enacted by Congress in 1992. Cable Television Consumer Protection and Competition Act of 1992, Pub.L. No. 102–385, § 20, 106 Stat. 1460, 1497 (1992). At least one court, interpreting similar language in 47 U.S.C.A. § 551(a)(2)(B) (West 2001),[5] has concluded that "any wire or radio communications service" plainly includes Internet service. *In re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d),* 157 F.Supp.2d 286, 291 (S.D.N.Y.2001). Congress used comparable language in its primary regulation of Internet privacy, the Electronic Communications Privacy Act. *See* 18 U.S.C.A.

---

47 U.S.C.A. § 551(c) (West 2001 & Supp. 2004).

**4.** The definitions contained within 47 U.S.C.A. § 522 (West 2001), by themselves, do not cover Internet service:

> (5) the term "cable operator" means any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system;
> (6) the term "cable service" means—
> (A) the one-way transmission to subscribers of (i) video programming, or (ii) other programming service, and
> (B) subscriber interaction, if any, which is required for the selection or use of such video programming or other programming service;
> (7) the term "cable system" means a facility, consisting of a set of closed transmission paths and associated signal generation, reception, and control equipment that is designed to provide cable service which in-

> cludes video programming and which is provided to multiple subscribers within a community, but such term does not include (A) a facility that serves only to retransmit the television signals of 1 or more television broadcast stations; (B) a facility that serves subscribers without using any public right-of-way; (C) a facility of a common carrier which is subject, in whole or in part, to the provisions of subchapter II of this chapter, except that such facility shall be considered a cable system (other than for purposes of section 541(c) of this title) to the extent such facility is used in the transmission of video programming directly to subscribers, unless the extent of such use is solely to provide interactive on-demand services; (D) an open video system that complies with section 573 of this title; or (E) any facilities of any electric utility used solely for operating its electric utility system.
> *Id.*

**5.** Section 551(a)(2)(B) states that "the term 'other service' includes any wire or radio communications service provided using any of the facilities of a cable operator that are used in the provision of cable service." 47 U.S.C.A. § 551(a)(2)(B) (West 2001).

§ 2701 (West 2000 & Supp.2004). Thus, it would appear that Time Warner, which also operates a traditional cable system, would qualify as a "cable operator" for purposes of 47 U.S.C.A. § 551.

[¶ 15] The resolution of this case, however, does not require us to determine whether Time Warner is a "cable operator" pursuant to § 551(a)(2)(C). Even if we accept Doe's position and assume that Time Warner is a "cable operator," § 551(c) provides several exceptions to the Act's prohibition on disclosure. The trial court determined that Doe consented to disclosure, pursuant to § 551(c)(1). While we agree with Doe that this determination was erroneous based on the record in this case, we nonetheless affirm the judgment because disclosure is authorized by § 551(c)(2)(B).

### 1. Consent

[¶ 16] The trial court determined that Doe consented to disclosure of his identifying information as part of his agreement with Time Warner. In support of its decision, the court cited language from the privacy notice Fitch submitted to the court.[6] This notice stated, inter alia, that Time Warner "may also disclose, pursuant to the consent you granted in your Subscription Agreement, the personally identifiable information . . . to comply with criminal or civil legal process." The court found that this language "constitutes notice to subscribers that they have consented to disclosure by Time Warner in the

ordinary course of its business of the subscriber's identifying information in response to civil legal process." Because 47 U.S.C.A. § 551(c)(1) (West 2001) permits disclosure with "the prior written or electronic consent of the subscriber," the court ordered disclosure.

[¶ 17] In this case, the question of consent was a factual finding. We review findings of fact for clear error. *Hartwell v. Stanley*, 2002 ME 29, ¶ 10, 790 A.2d 607, 611.

[¶ 18] The court's finding of consent is based entirely on the contents of the privacy notice Fitch attached to his final responsive pleading. M.R. Evid. 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fitch did not submit any affidavit or testimony to establish that the privacy notice was authentic, or that it applied to Doe. Fitch's counsel conceded at oral argument that the privacy notice lacked foundation.[7]

[¶ 19] Even if the privacy notice were established as authentic, it would be insufficient to establish that Doe consented to disclosure. By its very terms, the notice only authorizes consent to the extent that consent was previously authorized in the original subscriber agreement. Fitch did not submit Time Warner's subscriber agreement into evidence. Although Doe's

---

6. The court identified the language in question as coming from Time Warner's "standard subscriber agreement." Doe properly notes that the language came from the privacy notice that Fitch attached to his responsive pleading. No subscriber agreement was placed in evidence with the trial court.

7. Fitch argues that Doe failed to preserve any challenge to the adequacy of the record by failing to object to the privacy notice in the

trial court. The privacy notice and the issue of consent, however, were raised for the first time in Fitch's final responsive pleading, after Doe had filed his memorandum of law in opposition to disclosure. When a party does not have an opportunity to object to a ruling at the time it is made, the party is not prejudiced by the failure to object. M.R. Civ. P. 46.

anonymity may have made it difficult for Fitch to tender the actual document binding Doe and Time Warner, there were several other ways by which Fitch could have satisfied his burden of persuasion on the issue of consent. For example, Fitch could have presented evidence of Time Warner's routine business practice of requiring its subscribers to agree to consent. *See* M.R. Evid. 406. Alternatively, Fitch could have sought from Time Warner the terms of Doe's subscriber agreement, with any of Doe's identifying information redacted.

[¶ 20] Instead, Fitch submitted a single document purporting to be a privacy notice sent to Time Warner subscribers. Fitch offered no proof that the document was, in fact, the applicable privacy notice. He submitted no evidence that the notice was sent to Doe. The court's conclusion that this document, by itself, was adequate to establish Doe consented to disclosure of his identifying information was clearly erroneous.

▆▆ [¶ 21] Although this case could be remanded on the issue of consent, we may affirm the trial court's order for reasons different than those stated by the trial court. *Bouchard v. Frost*, 2004 ME 9, ¶ 8, 840 A.2d 109, 111. The question of consent is irrelevant if disclosure would be authorized by one of the other exceptions to 47 U.S.C.A. § 551. Our focus in this case is on the exception contained in § 551(c)(2)(B).

2. Disclosure Pursuant to 47 U.S.C.A. § 551(c)(2)(B)

▆▆ [¶ 22] Even if the subscriber has not consented, the Cable Act authorizes disclosure of personally identifiable information if the disclosure is, "subject to subsection (h) of this section, made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such

order by the person to whom the order is directed." 47 U.S.C.A. § 551(c)(2)(B). Subsection (h), which is referenced in § 551(c)(2)(B), provides a specific standard for disclosure when the government seeks personally identifiable information from a cable operator:

(h) Disclosure of information to governmental entity pursuant to court order

Except as provided in subsection (c)(2)(D) of this section, a governmental entity may obtain personally identifiable information concerning a cable subscriber pursuant to a court order only if, in the court proceeding relevant to such court order—

(1) such entity offers clear and convincing evidence that the subject of the information is reasonably suspected of engaging in criminal activity and that the information sought would be material evidence in the case; and

(2) the subject of the information is afforded the opportunity to appear and contest such entity's claim.

47 U.S.C.A § 551(h) (West Supp.2004).

[¶ 23] Doe contends that the reference to § 551(h) at the beginning of § 551(c)(2)(B) serves to meld the sections into one specific exception, applicable only when a governmental entity is seeking disclosure. This misapprehends the plain language of the statute. Section 551(c)(2)(B) allows a cable operator to disclose subscriber information when ordered to do so by a court. Section 551(h) imposes a stricter burden when it is a governmental entity seeking that information. If the government wants the information, it must demonstrate, by clear and convincing evidence, reasonable suspicion of criminal activity. 47 U.S.C.A. § 551(h)(1) (West Supp.2004). When the party seeking information is *not* a governmental entity, § 551(h) is not ap-

plicable. The use of the "subject to" language ensures that governmental entities will not be able to bypass § 551(h); it does not impose the requirements of § 551(h) on parties who are not governmental entities.

[¶ 24] Our interpretation of § 551(c)(2)(B) is consistent with that of the United States Court of Appeals for the Seventh Circuit in *CSC Holdings, Inc., v. Redisi,* 309 F.3d 988 (7th Cir.2002). In *Redisi,* the Seventh Circuit vacated a district court order denying the defendant's discovery request that the plaintiff, a cable operator, turn over copies of its subscriber lists. *Id.* at 996. Citing § 551(c)(2)(B), the Seventh Circuit flatly stated that "[t]here is no privilege or restriction on releasing customer records to a non-governmental entity pursuant to a court order." *Id.*

 [¶ 25] Fitch is not a governmental entity. Because he is not a governmental entity, Time Warner is permitted to release the information in response to a valid court order, so long as it gives notice to the subscriber. 47 U.S.C.A. § 551(c)(2)(B). Because the record in this case establishes that Doe already has received notice, federal law does not bar Fitch's access to the material Time Warner submitted to the trial court.

## C. First Amendment

[¶ 26] Doe and *amici* urge us to adopt heightened standards for use in the trial courts when a plaintiff seeks identifying information about an unknown speaker from an ISP. Other courts have adopted such standards to ensure that court orders do not infringe upon the First Amendment and the recognized right to anonymous speech. *See Dendrite Int'l, Inc. v. Doe,* 342 N.J.Super. 134, 775 A.2d 756 (2001); *Doe v. 2TheMart.com, Inc.,* 140 F.Supp.2d 1088 (W.D.Wash.2001); *Columbia Ins. Co.*

*v. Seescandy.com,* 185 F.R.D. 573 (N.D.Cal.1999).

 [¶ 27] The record in this case reveals that Doe never raised a First Amendment claim in the trial court. Doe's opposition to disclosure was based entirely on 47 U.S.C.A. § 551. "No principle is better settled than that a party who raises an issue for the first time on appeal will be deemed to have waived the issue, even if the issue is one of constitutional law." *Cyr v. Cyr,* 432 A.2d 793, 797 (Me.1981). Because Doe failed to raise the issue in the trial court, we decline at this time to consider the extent to which the First Amendment affects the consideration of motions to disclose information about anonymous ISP subscribers.

The entry is:

Judgment affirmed.