MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 78
Docket:      Cum-15-558
Argued:      October 26, 2016
Decided:     May 4, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.
Dissent:     JABAR, J.

MARIE GUNNING

v.

JOHN DOE

MEAD, J.

[¶1]  In August 2013, Marie Gunning brought suit in the Superior Court (Cumberland County) against the anonymous publisher and writer(s) (collectively John Doe) of *News as Viewed From a Crow's Nest* (Crow's Nest), a publication distributed locally in Freeport, Maine, and accessible on the Internet,[1] which Gunning claimed had published defamatory statements about her in several of its issues.  After a California court quashed a subpoena that Gunning served on the Crow's Nest's website host seeking to identify Doe, the Superior Court (*Warren, J.*) dismissed her complaint without prejudice for

---

[1]  Doe's brief states that the Crow's Nest is no longer available on the Internet.

failure to effect service on the defendants. Gunning appeals from that judgment. The publisher of the Crow's Nest (Doe #1) cross-appeals, agreeing with the court that Gunning is estopped by the California judgment from continuing to seek the Does' identities, and additionally contending that Gunning cannot force the Does to reveal their identities because the Crow's Nest is both nonactionable constitutionally protected parody and protected anonymous speech. We conclude that Gunning is estopped by the prior California judgment, and we affirm the judgment of the Superior Court without reaching Doe's alternative arguments.

## I. FACTS AND PROCEDURE

[¶2] In 2011, Gunning ran for the Freeport Town Council and was defeated. One week later, the Crow's Nest, which declares under its masthead that it is "a parody look at the news," published an "Election Special" issue, which included a photograph of the "Wicked Witch of the West" character from the classic movie *The Wizard of Oz* next to Gunning's name, along with the caption "Aka: 'Gunner Gunning' 'Miss Prozac 2003,'" and several purported quotes from Gunning. Several other people with apparent ties to Freeport were treated similarly. Gunning's complaint against Doe alleged three counts of libel and one count each of false light and intentional infliction of emotional distress

based on the statements concerning her in the "Election Special" issue, as well as those appearing in fifteen subsequent issues of the Crow's Nest.

[¶3] Gunning served a California subpoena on the Crow's Nest's website host, seeking the names, email addresses, and IP addresses of anyone associated with the publication's website. Does #1 and #2, who filed written declarations in the California Superior Court stating that they were the owner and writer, respectively, of the Crow's Nest website, moved to quash the subpoena in that court, asserting that the Crow's Nest was constitutionally protected parody and that they had a constitutional right to speak anonymously. In a decision issued on January 24, 2014, the court granted the motion to quash, ruling that

> [Gunning] must make a prima facie showing of libel. . . . [She] failed to make this prima facie showing. The Court finds that while the content of the Crow's Nest could be seen as rude and distasteful, taking into consideration the context and contents of the statements at issue, it is a parody. The speech at issue in the Crow's Nest is protected under the First Amendment of the U.S. Constitution. The statements are not actionable speech such that the identities of the website owner and persons who comment or otherwise publish material printed in or posted online at the Crow's Nest must be revealed pursuant to the subpoena.

*Doe v. Gunning*, No. CPF-13-513271 (Cal. Super. Ct. S.F. County Jan. 24, 2014).

[¶4] Gunning did not appeal the California judgment. Three months after that judgment issued, Gunning served a Maine subpoena on a Town of Freeport

4

employee in order to depose him to learn whether he was the writer for the Crow's Nest. The employee objected to the subpoena and provided an affidavit averring that he had never had anything to do with the Crow's Nest and had no knowledge of anyone who did. Fourteen months later, the employee, stating that Gunning again sought to depose him, moved to quash the subpoena on the grounds that Gunning was collaterally estopped by the California judgment from further discovery seeking to learn the identities of Does #1 and #2, and that her complaint failed to state a claim that could survive First Amendment scrutiny.[2] Doe #1 separately moved to quash the employee's subpoena and "to bar Gunning from issuing any other process to compel the disclosure of the anonymous speakers named in her Complaint, and to enter an order dismissing the Complaint."

[¶5] On October 22, 2015, the Superior Court issued an order granting the motion to quash and dismissing Gunning's complaint without prejudice for failure to effectuate service pursuant to M.R. Civ. P. 3.[3] The court said that "[l]eft to its own devices" it would "conclude that [G]unning has set forth a prima facie

---

[2] The court ruled that the employee's standing to make those arguments was not at issue because Doe #1 also moved to quash the subpoena.

[3] Although the Rule ordinarily requires service "within 90 days after the filing of the complaint," M.R. Civ. P. 3, the court explained that an extension of that deadline was implicit in its discovery orders in the case.

case and that she has submitted evidence sufficient to support the elements of her libel claim." The court found, however, that although it "would be inclined to find that there is at least a factual dispute as to whether [one specific] description of Gunning . . . would reasonably be understood to constitute a parody" and therefore be entitled to First Amendment protection,

> the court is not writing on a clean slate on that issue. . . . [W]hether or not this court agrees with the California ruling, the issue of whether Gunning has made the necessary prima facie showing [of an actionable claim] was actually litigated in California, was decided adversely to Gunning, and was essential to the outcome of the California action. . . . No appeal was sought. Accordingly, the California decision is entitled to collateral estoppel effect and precludes Gunning from relitigating the same issue here in Maine.

[¶6] Accordingly, the court quashed the subpoena and dismissed the complaint for lack of service on the Does. Gunning appealed and Doe #1 cross-appealed.

## II. DISCUSSION

[¶7] We first address the question of whether Gunning is precluded from relitigating in Maine the issue of the constitutional protection afforded to the statements made about her in the Crow's Nest. If she is, then the California court's determination that the statements are parody protected by the First Amendment controls, and Gunning's libel complaint fails to state an

6

actionable claim.[4]  In that event, the trial court did not abuse its discretion in quashing the Freeport employee's subpoena, and we need not reach the Does' contention that the statements in the Crow's Nest, if reviewed de novo, are entitled to protection either as constitutionally protected parody or as anonymous speech.  *See State v. Marroquin-Aldana*, 2014 ME 47, ¶ 33, 89 A.3d 519 ("We review a court's decision on a motion to quash for an abuse of discretion.").

[¶8]  The California judgment is conclusive to the extent that it quashed the subpoena issued to the Crow's Nest's website host, a result concerning a discrete collateral issue related to Gunning's suit that she does not challenge. *See Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998) (holding that pursuant to the Full Faith and Credit Clause, "the judgment of the rendering State gains

---

[4]  The elements of a libel claim are "a false and defamatory statement concerning another; an unprivileged publication to a third party; fault amounting at least to negligence on the part of the publisher; and either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  *Cole v. Chandler*, 2000 ME 104, ¶ 5, 752 A.2d 1189 (list headings omitted). Gunning's false light claim is similar, except that it involves propagating defamatory information through "publicity" rather than by "publication."  *Id.* ¶ 17.  If the statements in the Crow's Nest are constitutionally protected, then they are not "unprivileged," and Gunning cannot satisfy the second element of a libel claim.  *See* Simmons, Zillman & Gregory, *Maine Tort Law* § 13-11 at 13-19 (2004 ed.) ("[A defamation] action that meets all state common law requirements for recovery may fail because a recovery for the plaintiff would unconstitutionally abridge the freedom of speech and press.").  If Gunning's libel claim fails for that reason, her claim for intentional infliction of emotional distress fails as well.  *See Shay v. Walters*, 702 F.3d 76, 83 (1st Cir. 2012) ("The Supreme Court has made it pellucid that a failed defamation claim cannot be recycled as a tort claim for negligent or intentional infliction of emotional distress."); *Ault v. Hustler Magazine*, 860 F.2d 877, 880 & n.1 (9th Cir. 1988) ("There is no independent cause of action for intentional infliction of emotional distress based on the very same acts which are insufficient to support an action for defamation."), *cert. denied*, 489 U.S. 1080 (1989).

nationwide force"). Maine law, however, determines whether the judgment acts to foreclose Gunning's claims in this State. *See* Restatement (Second) of Conflict of Laws § 95 cmt. c (Am. Law Inst. Supp. 1989 revisions) ("[L]ocal law of the State where the judgment was rendered . . . will be consulted to determine whether the judgment affects the claim or only some incidental issue. If under this law the judgment was not on the merits and settled only some incidental issue . . . the judgment will be held conclusive in other States only as to the issue decided and the plaintiff will remain free to maintain an action on the original claim.").

[¶9]     In beginning that analysis, we have explained, applying well-established law, that

> [c]ollateral estoppel is the issue preclusion component of the principle of res judicata. It prevents the relitigation of factual issues already decided if the *identical issue* was determined by a prior *final judgment*, and the party estopped had a *fair opportunity and incentive* to litigate the issue in a prior proceeding. . . . The court's conclusion that collateral estoppel applies is a legal determination; our review of that conclusion is therefore de novo.

*Gray v. TD Bank, N.A.*, 2012 ME 83, ¶ 10, 45 A.3d 735 (alteration and quotation marks omitted) (emphases added); *see Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131 (stating that "[w]e have long recognized that

8

the doctrine of res judicata has two prongs," including "[i]ssue preclusion, also referred to as collateral estoppel," and claim preclusion).

A.    Identical Issue

[¶10]  Concerning the first element, the issue decided by the California court and that to be decided by Maine courts if Gunning is not estopped from relitigating it is the same—did Gunning make out a prima facie showing of libel, or were the statements made about her in the Crow's Nest shielded by the First Amendment from being the basis for a libel claim.  The trial court correctly found that "Gunning previously litigated that issue in California[.]"

B.    Final Judgment

[¶11]  Gunning vigorously contests the court's determination that "[t]he decision of the California Superior Court constituted a final decision on Gunning's application for interstate discovery."  Nonetheless, the only issue that the California court was asked to decide was whether the subpoena directed to the Crow's Nest's website host should be quashed.  Once it did so, there was nothing left for the California court to consider.  *See Fitzgerald v. Bilodeau*, 2006 ME 122, ¶ 4, 908 A.2d 1212 ("[A] judgment is final, and not interlocutory, when: (1) the trial court's action fully decides and disposes of the whole matter leaving nothing further for the consideration and judgment of the trial court;

and (2) no subsequent proceedings in the case will render the appellate court's decision immaterial." (quotation marks omitted)). The final provision in the California court's order and the final notation in the docket entries concern the resolution of costs and attorney fees involved in adjudicating the motion—indicative of a finished case.

[¶12] Gunning's argument that she is not estopped because appellate review of the California judgment was effectively unavailable to her is not persuasive. She points to the Restatement (Second) of Judgments § 28 (Am. Law Inst. 1982), which provides that "relitigation of [an] issue in a subsequent action between the parties is not precluded . . . [when] [t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." The first comment to section 28 elaborates: "There is a[n] . . . exception to the rule of preclusion when . . . appeal does not lie[] by . . . extraordinary writ[.]" *Id.* cmt. a.

[¶13] The Restatement limits the exception, however, in saying that "[t]he [section 28] exception . . . applies only when review is precluded as a matter of law. *It does not apply in cases where review is available but is not sought.*" *Id.* (emphasis added). Here, review of the order quashing the subpoena was available by extraordinary writ pursuant to the California Code

of Civil Procedure,[5] but Gunning opted not to seek such review. Accordingly, the Restatement exception to the collateral estoppel doctrine that is invoked when no appellate review is available does not apply.

[¶14] Although Gunning argues that she would have been required to show "immediate harm" in order to obtain an extraordinary writ and chose not to file a petition because she believed she would have been unsuccessful, it was for the California courts, and not Gunning, to say that the likely termination of her Maine lawsuit was not a qualifying "immediate harm," or that some other ground for granting a writ under California law did not apply.

[¶15] Like Gunning, the dissent goes to great lengths to predict an adverse ruling by California's appellate courts had Gunning pursued an extraordinary writ. Dissenting Opinion ¶¶ 23-26. That would be an unnecessary exercise if Gunning had requested a writ, as was her right. *See* Cal. Civ. Proc. Code § 2029.650(a) (Deering, LEXIS through ch. 4 of the 2017 Reg. Sess.). In any event, we are not a California court, and it is

---

[5] The California Code of Civil Procedure provides: "If a dispute arises relating to discovery . . . any request . . . to enforce, quash, or modify a subpoena, or for other relief may be filed in the superior court in the county in which discovery is to be conducted . . . ." Cal. Civ. Proc. Code § 2029.600(a) (Deering, LEXIS through ch. 4 of the 2017 Reg. Sess.). Thereafter, "[i]f a superior court issues an order . . . resolving a petition under Section 2029.600 . . . a person aggrieved by the order may petition the appropriate court of appeal for an extraordinary writ." Cal. Civ. Proc. Code § 2029.650(a) (Deering, LEXIS through ch. 4 of the 2017 Reg. Sess.).

indisputably true that Gunning did not pursue the avenue of appellate review available to her under California law—the venue that she chose. Had she done so, in addition to having a stronger argument in this appeal, that state's appellate courts would have had an opportunity to address what Gunning and the dissent contend are serious errors of law in the California Superior Court's decision. *See* Dissenting Opinion ¶ 35.

C.     Fair Opportunity and Incentive

[¶16]  Gunning asserts that although in furtherance of her Maine lawsuit she caused a subpoena to be served in California and then fully litigated the Does' motion to quash it, she "did not have a full and fair incentive to litigate the issue in the California court" because "she had another avenue available to her from which to seek disclosure of the *Crow's Nest* authors: the depositions that were being sought in Maine." That position is counterintuitive at best. A plaintiff in Gunning's situation would be very motivated to litigate a motion that (1) presumably involved considerable time and expense to pursue; (2) would have potentially yielded all of what she continues to seek had it succeeded, namely the identities and contact information of the website's host and contributors; and (3) would predictably lead, if the motion to quash were granted, to precisely what occurred—an effort to collaterally estop Gunning

12

from relitigating in Maine the central issue of whether the Crow's Nest statements were actionable at all.

[¶17] The Restatement provides, in a comment captioned "[l]ack of fair opportunity to litigate in the initial action," that

> the court in [a] second proceeding may conclude that issue preclusion should not apply because the party sought to be bound did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the first proceeding. Such a refusal to give the first judgment preclusive effect should not occur without a compelling showing of unfairness, nor should it be based simply on a conclusion that the first determination was patently erroneous.

Restatement (Second) of Judgments § 28 cmt. j. Gunning does not make any "compelling showing of unfairness" sufficient for us to conclude that she lacked opportunity or incentive to fully litigate this matter in California.

[¶18] Furthermore, in charging that our decision is unfair to Gunning because "we are allowing the California law to prevent [her] from pursuing her defamation case in this state," Dissenting Opinion ¶ 37, the dissent ignores the fact that Gunning had a full opportunity to litigate the issue at hand in the venue of her choosing. Had Gunning chosen to prosecute this Maine action by pursuing discovery in Maine's courts—for example if she had sought to depose

the Freeport employee before serving a subpoena in California,[6] or if she had withdrawn the subpoena when the Does' California motion to quash raised a potentially dispositive issue—then the Superior Court would have decided the Freeport employee's motion to quash based on Maine law, and either party could have appealed an adverse ruling to this Court. Instead, Gunning opted, of her own volition, to litigate a substantive issue in the California courts, presumably hoping for a favorable result. After receiving an unfavorable ruling, and choosing not to pursue an appeal of that ruling, she cannot simply elect to relitigate the very same issue involving the same parties in another jurisdiction, hopeful of obtaining a more favorable result. Such is the long-standing, well-established doctrine of collateral estoppel. *See Gray*, 2012 ME 83, ¶ 10, 45 A.3d 735.

D.    Conclusion

[¶19]    Because the issue decided by the California court in a final judgment was the same issue that Gunning seeks to have a Maine court revisit, namely whether the Crow's Nest enjoys constitutional protection sufficient to foreclose her libel claim, and because Gunning had both opportunity and

---

[6] In that event, if the Does had intervened and the Maine court ruled that Gunning had made out a prima facie case of libel, that judgment would have had preclusive effect in California.

14

incentive to litigate that issue in California, she is estopped from relitigating it in the Maine action. *See id.* Accordingly, the trial court did not abuse its discretion in quashing the subpoena served on the Freeport employee, or in dismissing Gunning's complaint for lack of service on the defendants as a result.[7] *See Marroquin-Aldana*, 2014 ME 47, ¶ 33, 89 A.3d 519; M.R. Civ. P. 3. Having concluded that the court did not err in finding that Gunning is precluded from relitigating the dispositive issue, we do not address the question raised in the cross-appeal of whether on de novo review we would reach the same conclusion as did the California court, and we offer no opinion as to whether the trial court correctly articulated Maine law concerning the extent to which anonymous speech is protected.[8]

---

[7] Gunning does not challenge the court's statement that, by agreement, if the subpoena were quashed then she "had no further avenues to pursue disclosure of the identities of John Does #1 and #2."

[8] Although the trial court went to considerable lengths to set out the analysis that it would have applied had it been "writing on a clean slate" on the issue of whether the Crow's Nest's statements concerning Gunning constituted actionable defamation, including citing a test articulated in *Dendrite International, Inc. v. Doe*, 775 A.2d 756, 760-61 (N.J. Super. Ct. App. Div. 2001), that discussion was dicta given the court's ultimate conclusion that Gunning was estopped by the California decision. We have previously made mention of *Dendrite* but have not adopted it, and we do not do so today. *See Fitch v. Doe*, 2005 ME 39, ¶¶ 26-27, 869 A.2d 722 ("Because Doe failed to raise the issue in the trial court, we decline at this time to consider the extent to which the First Amendment affects the consideration of motions to disclose information about anonymous ISP subscribers."). Thus, the dissent's discussion of the trial court's *Dendrite* analysis, and its declaration that "we have not addressed whether the *Dendrite* 'heightened burden' or some other procedural hurdle at the commencement of the suit will be the law of our state," Dissenting Opinion ¶ 34, simply create and then attack a straw man. *See supra* ¶ 7. We take no issue with the dissent's appeal to sovereignty when it says that "[t]he law in this area is evolving and we should be making our own decision as to what is the best policy for Maine," Dissenting Opinion ¶ 39, but today's opinion does

The entry is:

Judgment affirmed.

--------

JABAR, J., dissenting.

[¶20]  I respectfully dissent because I do not believe that a California court's order concerning a discovery dispute should be given preclusive effect on a defamation claim in Maine.  The law addressing defamation claims in California and Maine is not identical, and because of significant differences we should not give deference to the California court's order.  For the reasons discussed below, I would vacate the trial court's decision and remand for further proceedings.

## I.  DISCUSSION

A.    Restatement of Judgments

[¶21]  The Court refers to the Restatement (Second) of Judgments § 28 (Am. Law Inst. 1982) to support its decision.  Court's Opinion ¶ 13.  The Restatement in fact supports vacation of the trial court's judgment.  It reads:

--------

not have the effect that the dissent fears.  The California decision is controlling only in this case, and then only because that is where Gunning chose to litigate.  In the future, the Legislature is free to make any policy judgment in this area that it deems fit within constitutional constraints, and, contrary to the dissent's accusation, *see* Dissenting Opinion ¶¶ 28, 37, 39, our jurisprudence remains very much our own.

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1)  The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or

. . .

(3)  A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or

(4)  The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or

(5)  There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Restatement (Second) of Judgments § 28.

[¶22]  The California discovery order against Gunning meets several of these exceptions to the general rule of issue preclusion.  First, pursuant to

section 28(1) Gunning could not have obtained review of the judgment of the California Superior Court. Next, pursuant to sections 28(3) and (4), because California applies a different burden at the threshold of a case to litigants making defamation claims than the burden applied in Maine, a new determination of the issue is warranted. Finally, pursuant to section 28(5), there is a clear and convincing need for a determination in Maine of the scope of First Amendment protection when it conflicts with a plaintiff's right to seek recovery for defamation because this conflict involves important public interests.

B.    Inability to Seek Review

[¶23]  The Restatement provides that relitigation is not precluded where "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action."  Restatement (Second) of Judgments § 28(1).  Though the Court asserts that Gunning should have sought review in California of the order granting Doe's motion to quash, Court's Opinion ¶¶ 13-15, I disagree that as a matter of law review was available to Gunning.

[¶24]  The California Code of Civil Procedure provides that when a California superior court issues an order resolving a motion to quash, "a person

aggrieved by the order may petition the appropriate court of appeal for an extraordinary writ." Cal. Civ. Proc. Code § 2029.650(a) (Deering, LEXIS through ch. 4 of the 2017 Reg. Sess.); Cal. Civ. Proc. Code § 2029.600(a) (Deering, LEXIS through ch. 4 of the 2017 Reg. Sess.). The case law in California indicates that an extraordinary writ is difficult to obtain: "[discovery] rulings are typically vested in the trial court's discretion, and even if an abuse can be shown it is often impossible for the aggrieved party to establish grounds for interlocutory intervention." *O'Grady v. Superior Court*, 44 Cal. Rptr. 3d 72, 82 (Cal. Ct. App. 2006). Only when an immediate harm is threatened by failure to grant review, "such as loss of a privilege *against* disclosure, for which there is no other adequate remedy," will review be granted. *Id.* at 83 (emphasis added); *see also Raytheon Co. v. Superior Court*, 256 Cal. Rptr. 425, 427 (Cal. Ct. App. 1989) ("[W]rit review is appropriate when [a] petitioner seeks relief from an order which may undermine a privilege.").

[¶25] The extraordinary writ required for Gunning's discovery appeal to move forward in California is not available to her because such a writ would only be granted if the facts were flipped—to achieve the writ, the order would need to have breached some privilege, rather than maintained it. For example, review by extraordinary writ has been granted when a court's order *denying*

motions to quash resulted "in the production of privileged materials and threaten[ed] the confidential relationship" between a client and an attorney. *Bank of Am., N.A. v. Superior Court*, 151 Cal. Rptr. 3d 526, 546 (Cal. Ct. App. 2013) (quotation marks omitted). Nor was Gunning subject to the immediate harm that is required to be granted an extraordinary writ. The only review permitted for the discovery order was by extraordinary writ, and it was, as a matter of California law, unavailable to Gunning.

[¶26] It is unrealistic for the Court to assume otherwise. *See* Court's Opinion ¶ 13. A litigant need not go through a lengthy and expensive process to demonstrate something that is legally evident on its face. Where we can plainly see that review of the discovery order was not available in California, pursuant to section 28(1) of the Restatement, we should not allow collateral estoppel to prevent Gunning from litigating her defamation claim in Maine.

C.    Differing Burdens

[¶27] The Restatement also provides that relitigation is not precluded if the issue is one of law and a "new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts," or where "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial

action." Restatement (Second) of Judgments § 28(3)-(4). Here, both of these exceptions are implicated for essentially the same reason: the law addressing the issue of whether or not the litigant has a "heightened burden" when asserting a defamation action against an anonymous speaker has not previously been decided by this Court. California, in contrast to Maine, has adopted a "heightened burden" standard requiring a prima facie showing of the elements of the plaintiff's claim in order to overcome a motion to quash a subpoena seeking the speaker's identity. *See Krinsky v. Doe*, 72 Cal. Rptr. 3d 231, 245 (Cal. Ct. App. 2008). Applying the California law here imposes California's "significantly heavier burden of persuasion" upon Gunning. *See* Restatement (Second) of Judgments § 28(4).

[¶28] The drafters of the comments to the Restatement assert that in subsequent cases such as this, "the more flexible principle of stare decisis is sufficient to protect the parties and the court from unnecessary burdens." *Id.* cmt. b. "A rule of law declared in an action between two parties should not be binding on them for all time, especially . . . when other litigants are free to urge that the rule should be rejected. Such preclusion might unduly delay needed changes in the law and might deprive a litigant of a right that the court was prepared to recognize for other litigants in the same position." *Id.* Allowing the

California order to determine the outcome of Maine defamation claims by collaterally estopping litigation in Maine on the basis of discovery orders delays needed review of Maine law and deprives litigants of rights that would otherwise be recognized.

[¶29] Additionally, "reexamination [of a legal principle] is particularly appropriate when the application of the rule of issue preclusion would impose on one of the parties a significant disadvantage." *Id.* cmt. c. This conflict between a litigant's right to access the courts and a defendant's First Amendment rights is analogous to Maine's anti-SLAPP statute, which imposes a statutory burden upon those bringing claims that implicate a party's constitutionally protected First Amendment rights. *See* 14 M.R.S. § 556 (2016). In an anti-SLAPP case, upon a showing by the speaker "that the claims against it are based on the exercise of that party's constitutional right to petition," the burden shifts to the nonmoving party to demonstrate prima facie evidence through pleadings and affidavits that "at least one of the moving party's petitioning activities was devoid of any reasonable factual support or any arguable basis in law and caused actual injury to the [non-moving party]." *Nader v. Me. Democratic Party*, 2013 ME 51, ¶¶ 13-14, 66 A.3d 571; *see also* 14 M.R.S. § 556. This procedural hurdle placed before litigants in Maine is

similar to the "heightened burden" hurdle imposed by California on litigants pursuing a defamation action against a defendant claiming protected speech under the First Amendment.

[¶30]  Like our jurisprudence addressing the anti-SLAPP statute, we are faced with a clash between Gunning's right to access the courts for redress of grievances, and Doe's First Amendment rights.  However, unlike the anti-SLAPP protections, there is no Maine legislation nor any Maine case law imposing a "heightened burden" upon litigants who bring defamation claims against individuals claiming that First Amendment protection.  Instead, there is only case law in a few scattered states that have placed this type of threshold hurdle against plaintiffs.  To date, we have not established such a hurdle, nor has the United States Supreme Court.  There are serious policy concerns that this Court should consider prior to placing this type of obstacle in front of litigants, not the least of which is whether such an obstacle should be imposed by us or by the Maine Legislature.

[¶31]  The policy concerns are significant.  The California court relied upon *Krinsky* to require that Gunning show a prima facie case of defamation. *Krinsky*, in turn, relied upon *Dendrite International, Inc. v. Doe*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001); *Doe v. Cahill*, 884 A.2d 451 (Del. 2005); and

*Highfields Capital Management L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2004), among other cases, to hold, after a thorough analysis of methods by which courts in several jurisdictions balance the competing rights of access to the courts and First Amendment protection, that California will require a prima facie showing before allowing discovery to proceed in defamation cases against anonymous speakers. *Krinsky*, 72 Cal. Rptr. 3d at 241-46. The *Krinsky* court undertook a California-specific assessment of the case law, noting that it was addressing "California subpoenas" and that "specific *Dendrite* criteria to defeat a protective order or motion to quash may likewise be dependent on the different pleading and motion procedures across states."[9] *Id.* at 244. The court even pointed out that in certain states the second *Dendrite* criterion would be "essential," whereas in other states, it would be "superfluous." *Id.*

---

[9] It is worth noting that the *Dendrite* court's analysis emphasized that "New Jersey's State Constitution affords even greater protection to persons' rights to free speech than does [the] federal Constitution . . . ." *Dendrite Int'l, Inc. v. Doe*, 775 A.2d 756, 765 (N.J. Super. Ct. App. Div. 2001). Other courts have therefore applied a "heightened burden" to plaintiffs in defamation cases based on state constitutional protections that may or may not be coextensive with the constitutional protections guaranteed by the Maine Constitution, *see id.* at 766—protections that the Court here does not address.

24

[¶32] We should engage in our own assessment of whether to impose a "heightened burden" in defamation claims against anonymous speakers asserting First Amendment protection.[10]

## D. Public Interests

[¶33] Finally, the Restatement provides that relitigation is not precluded when "[t]here is a clear and convincing need for a new determination of the issue . . . because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action." Restatement (Second) of Judgments § 28(5)(a).

---

[10] In this case, the Maine Superior Court mistakenly concluded that Maine and California law are identical, imposing a "heightened burden" on litigants pursuing a defamation claim against an anonymous defendant. The court attempted to define the issue before it by stating that "[t]he motions to quash before the court turn on whether Gunning has met her burden of demonstrating entitlement to proceed with discovery when her rights are weighed against what the Law Court has stated as 'the recognized right to anonymous speech,'" citing to our decision in *Fitch v. Doe*, 2005 ME 39, ¶ 26, 869 A.2d 722.

In *Fitch*, however, Doe and amici urged the Court to adopt the "heightened burden" test enunciated in *Dendrite*, and the Court declined to address the question because Doe failed to raise a First Amendment issue in the trial court. *Id.* ¶ 27. As the Court today acknowledges, Court's Opinion ¶ 18 n.8, we have never held that *Dendrite* is the law in our state, or otherwise indicated that *Dendrite* or any similar "heightened burden" would control cases in which a plaintiff seeks to bring a defamation case.

It is therefore inapposite that, relying upon the elements from *Dendrite*, which the California court did not even cite, the Maine Superior Court would conclude that because "one of the essential Dendrite requirements"—whether Gunning established a prima facie case sufficient to support her libel claim—was fully litigated in California and decided adversely to Gunning, collateral estoppel precludes Gunning from relitigating her claim in Maine.

[¶34] In Maine, we have not addressed whether the *Dendrite* "heightened burden" or some other procedural hurdle at the commencement of the suit will be the law of our state.[11]  Even though the Maine Superior Court in this case indicated that Gunning had presented a prima facie case, the Court today is preventing Gunning from proceeding with her defamation claims because a California court interpreting California state law concluded that pursuant to an analysis applied uniquely in California—which the *Krinsky* court found "unnecessary and potentially confusing," *Krinsky*, 72 Cal. Rptr. 3d at 244— Gunning had not presented a prima facie case.  This is not the approach that we should take.

[¶35] Also concerning is the California court's conclusion that the speech at issue was parody and therefore protected by the First Amendment, rendering the speech not actionable.[12]  What constitutes parody includes factual determinations best left to a jury.  *See Masson v. New Yorker Magazine*,

---

[11]  The Court states in its opinion that if Gunning had litigated the motion to quash in Maine and the Maine court had ruled that Gunning had made out a prima facie case, that judgment would have preclusive effect in California.  Court's Opinion ¶ 18 & n.6.  This argument is misplaced because presently, under Maine law, Gunning would not be required to establish a prima facie case before proceeding with discovery.

[12]  The Court states that the claim for defamation was for Doe's comparison in newsprint of Gunning with the "Wicked Witch of the West" from *The Wizard of Oz*, as well as a caption stating "Miss Prozac 2003."  Court's Opinion ¶ 2.  The article concerning Gunning also contains a more blatantly defamatory statement: "Rumors continue that, Marie is suffering from a bipolar disorder with acute depression and paranoia, amplified by substance abuse."

501 U.S. 496, 522 (1991) (stating that when "[a] reasonable jury could find a material difference between the meaning of [a published, written] passage and [a] tape-recorded statement," the falsity of the published passage is a jury question); *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1232 (7th Cir. 1993) (discussing several trademark parody cases in which summary judgment was vacated because "[t]oo many disputed facts require[d] a trial for resolution"); *Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 317-18, 320 (4th Cir. 1992) (holding that a federal district court judge "improperly assumed the jury's role of determining" whether a t-shirt depicting a beer can was parody when the district court granted entry of judgment notwithstanding the verdict, because "the jury was uniquely positioned to make the critical determination in that regard"); *San Francisco Bay Guardian, Inc. v. Superior Court*, 21 Cal. Rptr. 2d 464, 468 (Cal. Ct. App. 1993) ("It is not for the court to evaluate the parody as to whether it went 'too far.'"); *Kiesau v. Bantz*, 686 N.W.2d 164, 177 (Iowa 2004) ("To be a parody, the jury must find the altered photograph could not reasonably be understood as describing actual facts . . . or actual events . . . ."), *overruled on other grounds by Alcala v. Marriott Int'l Inc.*, 880 N.W.2d 699, 708 & n.3 (Iowa 2016).  Because the California court entered into its own assessment, based on review of the parties' moving papers,

of whether the speech constituted a parody, thereby reducing a mixed question of fact and law into a question of law, the California court's discovery order should not have preclusive effect on the litigation of the issue in Maine.

[¶36]  Furthermore, the Maine Superior Court stated that it believed Gunning had established a prima facie case of defamation and that there was a genuine issue of fact as to whether Doe's speech constituted parody, but it felt compelled to collaterally estop Gunning from litigating the issue because of the California court's discovery decision.  Unless and until we impose a "heightened burden" on litigants claiming defamation, a jury, rather than a court, should determine whether Doe's speech was parody.  Because of the status of the law in Maine, the issues in the California court are not identical to those before the court in Maine and do not warrant preclusive application of collateral estoppel.

[¶37]  Despite the Maine trial court's indication that Gunning may have satisfied the "heightened burden" standard, we are allowing the California law to prevent Gunning from pursuing her defamation case in this state.  Maine has never ruled that there is a "heightened burden" for a plaintiff to make a prima facie showing of defamation before proceeding with a claim.  A decision of this magnitude should not be decided by simply deferring to a California trial court's imposition of a "heightened burden" on a discovery order.  *See*

Restatement (Second) of Judgments § 29(7) (Am. Law Inst. 1982) (stating that a party should not be precluded from relitigating an issue when "[t]he issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based").

[¶38]   "Decisions of this sort demonstrate that res judicata, as the embodiment of a public policy, must, at times, be weighed against competing interests, and must, on occasion, yield to other policies." *Spilker v. Hankin*, 188 F.2d 35, 38-39 (D.C. Cir. 1951).   "[W]hen as here private litigation has extensive implications of public import, the rule of res judicata or estoppel is not allowed to stultify reassessment of the prior decision.  The public interest supersedes the private interest." *Griffin v. State Bd. of Educ.*, 296 F. Supp. 1178, 1182 (E.D. Va. 1969).  Because the public interest in Maine courts establishing our own framework for balancing the rights at stake in this case outweighs Doe's interest in not relitigating the issue of whether Doe's speech constitutes defamation, I cannot join the Court's decision.

## II.  CONCLUSION

[¶39]  There are significant issues in today's society surrounding social media, blogs, and claims of "fake news."  The law in this area is evolving, and we

should be making our own decision as to what is the best policy for Maine. Furthermore, as was done by the Maine Legislature with our anti-SLAPP statute, the Legislature should determine whether any "heightened burden" should be imposed upon litigants at the filing stage. This important policy decision should not be resolved by a discovery order in California.

[¶40] I would vacate the Maine Superior Court's decision and remand the case so that it may proceed as any other defamation case filed in a Maine court.

---

Gene R. Libby, Esq., Tara A. Rich, Esq., and Tyler Smith, Esq. (orally), Libby O'Brien Kingsley & Champion LLC, Kennebunk, for appellant Marie Gunning

Sigmund D. Schutz, Esq. (orally), Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellee John Doe

Zachary L. Heiden, Esq., American Civil Liberties Union of Maine Foundation, Portland, Paul Alan Levy, Esq., Public Citizens Litigation Group, Washington, DC, and George J. Marcus, Esq., Marcus, Clegg & Mistretta, P.A., Portland, for amici curiae Public Citizen, Inc., and American Civil Liberties Union of Maine Foundation

Cumberland County Superior Court docket number CV-2013-359
FOR CLERK REFERENCE ONLY